## INDIANA *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 1162. Argued January 13, 1893. — Decided March 13, 1893.

The State of Indiana is not entitled, under the act of April 19, 1816, c. 57, and the act of March 3, 1857, c. 104, to be paid by the United States the two per cent of the net proceeds of sales by Congress of lands within the State, which the United States agreed by the former act to apply "to the making of a road or roads leading to the said State," and have actually applied to the making of the Cumberland road.

THIS was a petition, filed in the Court of Claims on October 23, 1889, by the State of Indiana against the United States, to recover the sum of $412,184.97, alleged to be due to the State of Indiana out of moneys received by the United States from sales of public lands in that State. The Court of Claims dismissed the petition. 28 C. Cl. ——. The petitioner appealed to this court. The facts found by the Court of Claims, and the material provisions of the statutes bearing upon the claim of the petitioner, were as follows:

In the act of April 30, 1802, c. 40, for the admission of the State of Ohio into the Union, one of the propositions offered by Congress, and accepted by the State, was that one twentieth part of the net proceeds of lands within the State, afterwards sold by Congress, should "be applied to the laying out and making public roads, leading from the navigable waters emptying into the Atlantic, to the Ohio, to the said State, and through the same, such roads to be laid out under the authority of Congress, with the consent of the several States through which the road shall pass;" and it was provided that the propositions so offered were on condition that the State

should provide, by ordinance irrevocable without the consent of Congress, that all lands sold by Congress should be exempt from taxation under authority of the State for five years after sale. 2 Stat. 175. By the act of March 3, 1803, c. 21, § 2, it was enacted that three per cent of these proceeds should be paid, from time to time, to the State, to be applied to the laying out, opening and making roads within it. 2 Stat. 226.

By the act of March 29, 1806, c. 19, for building a road from Cumberland in Maryland to the State of Ohio, (since known as the Cumberland or National road,) and by subsequent acts passed before the admission of the State of Indiana into the Union, Congress appropriated for the building of that road various sums amounting to $710,000, to be reimbursed out of the two per cent fund. 2 Stat. 357, 555, 661, 730, 829; 3 Stat. 206, 282. The expenses upon the road during that period largely exceeded the moneys credited to that fund.

The act of April 19, 1816, c. 57, for the admission of the State of Indiana into the Union, likewise provided that five per cent of the net proceeds of the sale by Congress of lands in the State should be reserved for the making of public roads and canals, of which three fifths should be applied to those objects by the State, and two fifths " to the making of a road or roads leading to the said State, under the direction of Congress." 3 Stat. 290. And by the act of April 11, 1818, c. 49, the Secretary of the Treasury was directed to pay the three per cent, from time to time, to the State of Indiana. 3 Stat. 424.

Similar provisions were contained in the acts for the admission into the Union of Mississippi in 1817, of Illinois in 1818, of Alabama in 1819, and of Missouri in 1820. 3 Stat. 348, 428, 489, 545.

By the act of May 15, 1820, c. 123, Congress directed the road to be continued from Cumberland to Wheeling in the State of Virginia : provided, however, " that nothing in this act contained, or that shall be done in pursuance thereof, shall be deemed or construed to imply any obligation on the part of the United States to make, or to defray the expense of

making, the road hereby authorized to be laid out, or of any part thereof." 3 Stat. 604.

In 1822 the road had been finished from Cumberland to Wheeling. In the same year, an act ordering the erecting of toll gates and the imposition of tolls on the road was passed by both houses of Congress, but was vetoed by President Monroe.

A continuance of the road was laid out, graded, bridged and made a highway from the Ohio River opposite Wheeling to the seat of government of the State of Missouri, and upon it was transported the government mail, and it was opened and used by the public. But this was not accomplished until after toll gates had been erected and tolls imposed upon it by the States of Ohio and Virginia, as authorized by the acts of Congress of March 2, 1831, c. 97, and March 2, 1833, c. 79. 4 Stat. 483, 655. By successive acts, passed from 1829 to 1856 inclusive, and collected in the opinion of the Court of Claims, Congress surrendered the road, as fast as completed, to the States through which it ran.

By the act of September 4, 1841, c. 16, § 16, the two per cent of the net proceeds of the lands sold by the United States in the State of Mississippi, and reserved by former acts for the making of a road or roads leading to that State, was relinquished to the State of Mississippi, to be applied to the making of a railroad from Brandon in that State to the boundary line of Alabama; and by § 17, the like fund was relinquished to the State of Alabama, to be applied to the construction of certain lines of internal improvements in that State. 5 Stat. 457, 458.

By the act of March 2, 1855, c. 139, entitled "An act to settle certain accounts between the United States and the State of Alabama," it was enacted "that the Commissioner of the General Land Office be, and he is hereby, required to state an account between the United States and the State of Alabama, for the purpose of ascertaining what sum or sums of money are due to said State, heretofore unsettled, under the sixth section of the act of March 2, 1819, for the admission of Alabama into the Union; and that he be required to include in said account the several reservations under the various

treaties with the Chickasaw, Choctaw and Creek Indians within the limits of Alabama, and allow and pay to the said State five per centum thereon, as in case of other sales." 10 Stat. 630.

The act of March 3, 1857, c. 104, entitled " An act to settle certain accounts between the United States and the State of Mississippi and other States," required the Commissioner of the General Land Office, by § 1, " to state an account between the United States and the State of Mississippi, for the purpose of ascertaining what sum or sums of money are due to said State, heretofore unsettled, on account of the public lands in said State, and upon the same principles of allowance and settlement as prescribed in the " act of March 2, 1855, c. 139, and to include in like manner the reservations under Indian treaties; and further provided, in § 2, that "the said commissioner shall also state an account between the United States and each of the other States upon the same principles, and shall allow and pay to each State such amount as shall thus be found due, estimating all lands and permanent reservations at one dollar and twenty-five cents per acre." 11 Stat. 200.

On December 4, 1872, the Commissioner of the General Land Office stated an account between the United States and the State of Indiana, in which he found that, by accounts referred to, there appeared to be due to the State the following sums:

Balance due December 31, 1856, on account of
   three per cent fund...................... $47 12
Amount of two per cent on net proceeds of sales
   of public lands from December 1, 1816, to
   December 31, 1856, (the expenses incident to
   sales since that date being in excess of the
   gross receipts)........................... 413,568 61
Amount of five per cent on the cash value, at
   $1.25 per acre, of lands within permanent
   Indian reservations....................... 6,333 73
                                     $419,949 46

The Commissioner also referred to a table of the acts of Congress making appropriations for the construction of the Cumberland road, which showed that the sums appropriated from 1818 to 1837, under acts requiring them to be reimbursed out of the two per cent reserved for the laying out and making roads in the States of Ohio, Indiana and Illinois, amounted to $2,502,900.45; and that the additional sums appropriated from 1825 to 1836, under acts requiring them to be reimbursed out of the two per cent reserved for laying out and making roads in those three States and Missouri, amounted to $1,555,000. The Commissioner then stated that it would thereby be seen that the proportion of the sums from time to time appropriated for the construction of the Cumberland road, which, by law, were to be replaced in the Treasury out of the five per cent accruing in Ohio, Indiana, Illinois and Missouri, would more than absorb the entire amount of the two per cent which had accrued upon the sales of lands in Indiana; and that, therefore, in the absence of special legislation upon the subject, nothing would appear to be at present payable to the State of Indiana, except the sums of $47.12 on the three per cent account and $6333.73 for Indian reservations.

On January 25, 1873, the Comptroller of the Treasury certified the balance, consisting of those two sums, and amounting to $6380.85, to be due to the State of Indiana. On February 10, 1873, the Secretary of the Treasury, under the authority given him by the act of March 30, 1868, c. 36, (15 Stat. 54;) referred the account to the Comptroller for reëxamination, and he thereupon vacated the former certificate. On February 5, 1874, the Comptroller reaffirmed the former decision and certificate, as to the sum of $6380.85; but reserved for future consideration the question as to the further claim made by the State. This amount of $6380.85 was paid to the State, but was not accepted by it as a final settlement of its demands.

It did not appear, either from that account or from the evidence in the case, what part of the expenditures upon the National road was properly chargeable to "making a road

to the said State," or what proportion of such expenditures for making a road to the State of Indiana was properly chargeable to the States of Ohio, Illinois and Missouri.

On October 17, 1889, the State of Indiana made a formal demand upon the Commissioner of the General Land Office to state an account between the United States and the State of Indiana, in accordance with the act of March 3, 1857. But no further account than that above mentioned has been stated by the Commissioner of the General Land Office.

*Mr. William E. Earle* for appellant.

*Mr. Assistant Attorney General Parker* for appellees.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By each of the acts of Congress, successively admitting the States of Ohio, Indiana, Illinois and Missouri into the Union, Congress agreed that five per cent of the net proceeds of public lands within the State, sold by Congress, should be applied to the making of a road or roads leading to the State; and by those and other acts it was provided that, of this five per cent fund, three per cent should be disbursed by the States, and two per cent by the United States. The general purpose was to promote the construction of a national highway connecting the new States in the interior with the old States on the Atlantic seaboard.

In the act for the admission of Indiana, the original obligation assumed by Congress in this respect did not define the termini of the road or roads to be built, or bind Congress to complete any road, or require the two per cent of the proceeds of the sales of lands in Indiana to be expended within the State; but the only obligation was to apply this two per cent fund " to the making of a road or roads leading to the said State, under the direction of Congress." It was for Congress to decide on what part of the road leading to Indiana this fund should be expended; and Congress had the right to

treat the road as a whole, constructed for the benefit of all the States through which it passed.

It is unnecessary to determine whether this obligation was in the nature of a contract only, or whether it can be considered as in any sense constituting a trust; because, in either aspect, the contract has been performed, or the trust executed, by applying the fund in question to the making of a road "leading to the said State" of Indiana.

It appears by the statement of the account between the United States and the State of Indiana by the Commissioner of the General Land Office, (which there is nothing in the case to control,) that the sums appropriated to the construction of the Cumberland road leading to the State of Indiana greatly exceeded the whole amount of the two per cent fund from sales of lands in the State; and that, therefore, in the absence of special legislation upon the subject, nothing was payable to the State of Indiana on account of this fund.

Congress having a general authority to apply this fund to any part of the road leading to the State of Indiana, the presumption is that this authority was honestly and fairly exercised, and there is nothing whatever in the record which has any tendency to rebut this presumption. Such being the case, the statement in the findings of fact, that it did not appear, from that account or otherwise, what part of the expenditures upon the road was properly chargeable to "making a road to the said State," or what proportion of such expenditures for making a road to the State of Indiana was properly chargeable to the States of Ohio, Illinois and Missouri, is wholly immaterial; and it was so treated by both parties at the argument.

As appears by the definition of the petitioner's position at the beginning of the brief of its counsel, the failure of the United States to build the National road was not made the foundation of the claim, but "was only suggested in argument as a motive, by way of incidental explanation" of the act of March 3, 1857, c. 104, § 2, upon which he relied, and under which he contended that "it was immaterial what moneys had been expended by the government toward the

construction of the National turnpike." · The decision of the case, therefore, turns upon the interpretation and effect of this act.

The argument for the appellant is based upon the following· enactments: By the act of September 4, 1841, c. 16, §§ 16, 17, the United States relinquished to the States of Alabama and Mississippi the two per cent fund accruing from sales of lands in those States. By the act of March 2, 1855, c. 139, the Commissioner of the General Land Office was required to state an account between the United States and the State of Alabama, " for the purpose of ascertaining what sum or sums of money are due to said State, heretofore unsettled," under the act of 1819 admitting that State into the Union, and to include in that account the reservations under treaties with Indians within the limits of Alabama, "and allow and pay to the said State five per centum thereon, as in case of other sales."· By the act of March 3, 1857, c. 104, § 1, the commissioner was required to state an account between the United States and the State of Mississippi "upon the same principles of allowance and settlement as prescribed in " the act of 1855 ; and by section·2 of the act of 1857, "said commissioner shall also state an account between the United States and each of the other States upon the same principles, and shall allow and pay to each State such amount as shall thus be found due, estimating all lands and permanent reservations at one dollar and twenty-five cents per acre."

It is argued for the appellant that, as by the act of 1857 the account between the United States and the other States is to be settled "upon the same principles " as prescribed in that act with relation to Mississippi, and in the act of 1855 with relation to Alabama, and as by the act of 1841 the two per cent fund had been relinquished to Alabama and to Mississippi, therefore the payment to the State of the whole two per cent is one of the principles on which the account with each of the other States is to be settled.

But the premises relied on do not support the conclusion. Neither the act of 1857, nor the act of 1855, refers to the act of 1841. The act of 1857 requires the account with each

State to be settled on "the same principles of allowance and settlement as prescribed" in the act of 1855. The principles of allowance and settlement prescribed in the act of 1855 are that the account with Alabama be stated "for the purpose of ascertaining what sum or sums of money are due to said State, heretofore unsettled," under the act for its admission into the Union, and including five per cent on the Indian reservations within the State, "as in case of other sales." The principles of settlement are that the United States shall be charged with the sums due, treating Indian reservations as sales. They may not be limited to Indian reservations, and may well include any unpaid balance of the three per cent fund which Congress had agreed should be disbursed by the States, as well as any part of the two per cent fund which had not been applied by the United States to the making of a road or roads according to their original obligation. But there is nothing, in any of the acts upon the subject, which warrants the inference that Congress intended that, because the United States held themselves to be liable to Alabama and to Mississippi for the two per cent fund which they had never applied as they had agreed, they should therefore be liable to the other States for the like two per cent fund which had been fully appropriated and expended in accordance with their obligations to those States.

These views being conclusive against the right of the State of Indiana to recover anything in this case, it is unnecessary to consider the other questions discussed in the opinion of the Court of Claims and argued in this court.

*Judgment affirmed.*