## SMITH v. RACKLIFFE.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1898.)

No. 422.

1. JURISDICTION OF FEDERAL COURTS—ACTION AGAINST STATE OFFICER.

An action by a citizen of another state or by an alien against a state treasurer to recover taxes alleged to have been illegally collected by the state is, in effect, an action against the state, and cannot be maintained in a federal court in view of the prohibition of the eleventh amendment.

2. SAME.

Pol. Code Cal. § 3669, which provides for bringing suits against the state to recover taxes illegally collected, is ·not to be construed as a consent that such suits may be brought in the federal courts, since it contains provisions wholly inapplicable to the procedure of the federal courts, among them being a provision that, at a certain stage of the case, the treasurer may cause it to be removed into the superior court for the county of Sacramento.

3. SAME—CITIZENSHIP—RECEIVERS OF CORPORATIONS.

It is only where the jurisdiction of the federal courts depends upon diverse citizenship that the citizenship of a receiver of an incorporated party is material. If the jurisdiction is asserted on any other ground, the receiver stands upon the same footing as the corporation itself.

4. SAME.

The provision in the constitution giving the federal courts jurisdiction of controversies "between a state and citizens of another state, * * * and between a state, or the citizens thereof, and foreign states, citizens or subjects" (article 3, § 2), does not include an action against a state by a corporation created by act of congress.

Appeal from the Circuit Court of the United States for the Northern District of California.

C. N. Sterry and E. S. Pillsbury, for plaintiff in error.

W. F. Fitzgerald and W. H. Anderson, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The plaintiff in error, as receiver for the Atlantic & Pacific Railroad Company, was the plaintiff in an action which was brought against the state treasurer of the state of California, under section 3669 of the Political Code of California, to recover $2,272.80 taxes paid by said company for the year 1893. alleging, in his complaint, that said railroad company was operating, under a lease from the Southern Pacific Railroad Company, a certain line of railroad in the state of California, over which leased line the lessor company also ran its trains; that said line of road, and the

rolling stock thereon, owned and operated by the Southern Pacific Railroad Company, were returned by that company to the state board of equalization for assessment for the year 1893, and were assessed to said Southern Pacific Company at a certain apportioned valuation per mile for all of the road which is covered by the lease; that the rolling stock on said leased road, owned and operated by the Atlantic & Pacific Railroad Company, was returned under protest by that company to the state board of equalization, and was by said board assessed for the year 1893 to its said owner; that each of said companies paid the taxes levied upon its property: that the said rolling stock of the Atlantic & Pacific Railroad Company so assessed was not used alone upon the line of the leased road in California, but was used in said company's traffic in other states, and was constantly coming and going into and out of said state, and that the Atlantic & Pacific Railroad Company's headquarters and the situs of its rolling stock is in the county of Bernallio, N. M., in which county all of its rolling stock was returned for taxation in 1893; that said assessment on the rolling stock of both companies using said road resulted in double taxation. The action was begun in the name of J. W. Reinhart, the former receiver of said road, and against J. R. McDonald, then the state treasurer. To the said complaint a demurrer was interposed, upon the grounds—First, that the court had no jurisdiction of the subject-matter of the action; and, second, that the complaint failed to state facts sufficient to constitute a cause of action. The circuit court, McKenna, J., sustained the demurrer upon the second ground, but disposed of the question of the jurisdiction in the following language:

"The view that this is a suit against the state is presented by the attorney general with great strength and plausibility. But, even if the contention be true, I think it is a fair deduction from the authorities, as from principle, that, the right of suit against the treasurer of the state being given, it may be brought in the federal courts when other grounds of jurisdiction exist, as they do in this case. I do not think it is necessary to review the cases. They are very numerous, and the care of counsel has cited all of them." Reinhart v. McDonald, 76 Fed. 403.

Upon writ of error from this court, the plaintiff in error contends that the circuit court erroneously sustained the demurrer, and the defendant in error again raises the objection which was presented in the lower court, that the court is without jurisdiction of the subject-matter of the action upon the ground that it is an action against the state of California, and subject to the inhibition of the eleventh amendment to the constitution of the United States, which provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." There can be no doubt that the action, although nominally against the state treasurer, is in fact an action against the state of California. From the time of the adoption of the eleventh amendment the supreme court of the United States has held that it should be construed fairly and liberally, and in consonance with its manifest purpose, and has established the doctrine that when, "the nominal defendants have no personal

interest in the subject-matter of the suit, but defend only as representing the state, the state is the real party against whom the relief is sought, and this suit is substantially within the prohibition of the eleventh amendment." Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608; Louisiana v. Jumel, 107 U. S. 711, 2 Sup. Ct. 128; In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, Louisiana v. Steele, 134 U. S. 230, 10 Sup. Ct. 511. In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, Mr. Justice Matthews said, of the purpose of the eleventh amendment:

> "It was thought to be neither becoming nor convenient that the several states of the Union invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons, whether citizens of other states or aliens, or that the course of their public policy and administration of their public affairs should be subject to, and controlled by, the mandates of judicial tribunals without their consent, and in favor of individual interests. To secure the manifest purposes of the constitutional exemption guarantied by the eleventh amendment requires that it should be interpreted, not literally and too narrowly, but fairly, and with such breadth and largeness as to effectually accomplish the substance of its purpose. In this spirit, it must be held to cover, not only suits brought against a state by name, but those also against its officers, agents, and representatives, where the state, though not named as such, is, nevertheless, the only real party against which alone, in fact, the relief is asked, and against which the judgment or decree effectively operates."

The present case comes clearly within the line of cases to which these words apply. It is a case in which the state of California is alone interested as defendant. No personal relief is sought as against the state treasurer, no act of his is brought in question, and no official misconduct is charged against him. So far as he is concerned, the action is purely impersonal. It was originally begun against McDonald, his predecessor in office. It is the aim of the action to recover from the state treasurer, in his official capacity only, money which has been paid to the state for taxes, and mingled with other funds of the state. The money which the treasurer receives as such is kept by him in the vaults of the state treasury. It is so required by subdivision 1 of section 452 of the Political Code. If a judgment were rendered for plaintiff in the action, the treasurer, upon the controller's warrant, would be required to repay the tax money out of taxes so illegally collected, and to pay the costs out of the general fund of the treasury. The money sued for was not originally paid to the treasurer. It did not pass through his hands, but came into the treasury through other officers. The state is the only party in interest.

But, notwithstanding the eleventh amendment, the state may, by an act of its legislature, permit itself to be sued, either in a federal court or in its own courts. It is contended by the plaintiff in error that such permission has been granted in the present case by the provisions of section 3669 of the Political Code of California, which reads as follows:

> "Sec. 3669. Each corporation, person, or association assessed by the state board of equalization, must pay to the state treasurer upon the order of the controller, as other moneys are required to be paid into the treasury, the state and county, and city and county, taxes each year levied upon the property so assessed to it or him by said board. Any corporation, person, or association, dissatisfied with the assessment made by the board, upon the payment

of the taxes due upon the assessment complained of, and the five per cent. added, if to be added, on or before the first Monday in February, and the filing of notice with the controller of an intention to begin an action, may, not later than the first Monday of February, bring an action against the state treasurer for the recovery of the amount of taxes and percentage so paid to the treasurer, or any part thereof, and in the complaint may allege any fact tending to show the illegality of the tax, or the assessment upon which the taxes are levied, in whole or in part. A copy of the complaint and of the summons must be served upon the treasurer within ten days after the complaint has been filed, and the treasurer has thirty days within which to demur or answer. At the time the treasurer demurs or answers he may demand that the action be tried in the superior court of the county of Sacramento. The attorney general must defend the action. The provisions of the Code of Civil Procedure relating to pleadings, proofs, trials, and appeals are applicable to the proceedings herein provided for. If the final judgment be against the treasurer, upon presentation of a certified copy of such judgment to the controller, he shall draw his warrant upon the state treasurer, who must pay to the plaintiff the amount of the taxes so declared to have been illegally collected, and the cost of such action, audited by the board of examiners, must be paid out of any money in the general fund of the treasury, which is hereby appropriated, and the controller may demand and receive from the county, or city and county, interested, the proportion of such costs, or may deduct such proportion from any money then or to become due to said county, or city and county. Such action must be begun on or before the first Monday in February of the year succeeding the year in which the taxes were levied, and a failure to begin such action is deemed a waiver of the rights of action."

By this statute the state of California has made a general provision whereby it consents to be sued in its own courts in actions of the nature of the case at bar. Has it consented to be sued in the federal court? The state has the unquestioned right to select the forum in which it shall be sued, to prescribe the manner in which the suit shall be conducted, and to impose upon the prosecution of the action any condition that may be deemed proper. It may even retract its permission to be sued after an action has been begun. Railroad Co. v. Alabama, 101 U. S. 832. Examining the section just quoted, it will be seen that conditions are imposed which are wholly incompatible with a consent to be sued in the United States courts. It is made a condition of the action that, at the time when the treasurer demurs or answers, he may demand that the case be tried in the superior court of the county of Sacramento. That condition is a valid one, and it conserves a substantial right to the state. It could not be complied with in an action in the United States court. No cause can be transferred from the United States circuit court for the Northern district of California to the superior court of the state of California for Sacramento county. Again, it is provided in the same section that "the provisions of the Code of Civil Procedure, relating to pleadings, proofs, trials and appeals are applicable to the proceedings herein provided for." Although practice in the federal courts conforms as nearly as may be to that of the state courts in actions at law, there are certain features in which their procedure is controlled by acts of congress, from which the federal courts are not at liberty to deviate in response to any provision of a state statute, and the clause of the language just quoted in reference to appeals could have no application whatever in a proceeding in the United States court. By this provision in regard to appeals, it was clearly the intention of the legislature to make the supreme court of

the state of California the court of last resort to pass upon all questions which might arise in such an action. It was intended that the rights of litigants in such a suit should be subject to the construction which that court should finally adopt. That provision secures to the state the most substantial right which is conserved to it in the section just quoted, and presents an insurmountable obstacle to the prosecution of the action in a court of the United States.

But it is urged by the plaintiff in error that the Atlantic & Pacific Railroad Company is not a citizen of another state, nor a citizen or subject of a foreign state, but is a corporation created under an act of congress for the express purpose of acting as an agent for the federal government, and is therefore not among those from whom, by the terms of the 11th amendment, the power to sue a state is withheld. The receiver stands upon the footing of the corporation itself. If the corporation had the right to sue the state of California, the receiver undoubtedly has succeeded to the right. It is only where the jurisdiction of the United States courts depends upon diverse citizenship that the citizenship of the receiver is to be regarded. New Orleans v. Gaines' Adm'r, 138 U. S. 595, 11 Sup. Ct. 428; American Nat. Bank v. National Benefit & Casualty Co., 70 Fed. 420; Brisenden v. Chamberlain, 53 Fed. 307. The effect of the eleventh amendment was to overrule the decision of the supreme court in the case of Chisholm v. Georgia, 2 Dall. 419, in which it had been said, under the terms of article 3 of the constitution, extending the judicial power of the United States to controversies between a state and the citizens of another state, that a state was subject to a suit by a citizen of another state. Said Mr. Justice Matthews in Re Ayers, above cited: "The very object and purpose of the eleventh amendment were to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties." In Hans v. Louisiana, 134 U. S. 1, 10 Sup. Ct. 504, it was held that the purpose of the eleventh amendment was to recognize the sovereignty of the state, and to declare that the judicial power of the United States was never intended by the framers of the constitution to extend to suits by individuals against a state, and that the amendment should not be so construed as to inhibit only suits at the instance of the particular classes of citizens named therein, but that it applied as well to suits against a state by its own citizens. The jurisdiction of the court in that case was invoked upon the ground that a federal question was involved in the controversy. The principles announced in the decision are conclusive of the question which is now before us. But we find a further and complete answer to the contention of the plaintiff in error. The jurisdiction of the United States court in the present case is not invoked upon the ground that the controversy presents a case arising under the constitution or laws of the United States. Nor can jurisdiction be claimed upon the ground of the diverse citizenship of the parties, since, as we have seen, the state itself is a party. It must rest upon some other grant of jurisdiction. The only other grant under which it could be claimed is that which is contained in section 2 of article 3 of the constitution, declaring that the judicial power of the United States shall extend to controversies "between a state and citizens of another state, * * * and between a

state or the citizens thereof and foreign states, citizens or subjects." The plaintiff in error must find in this provision his right to proceed in a federal court, and if the Atlantic & Pacific Railroad Company is not a citizen of a state, or a citizen or subject of a foreign state, the controversy is not among those of which jurisdiction is conferred upon the United States courts by the constitution. It follows that the cir-cuit court erroneously entertained jurisdiction of the cause. For want of jurisdiction the judgment of dismissal is affirmed.