BALLAINE v. ALASKA NORTHERN RY. CO. (UNITED STATES,
Intervener).

(Circuit Court of Appeals, Ninth Circuit.   July 7, 1919.)

No. 3158.

RAILROADS ⬦═5½, New, vol. 6A Key-No. Series—ACTIONS AGAINST GOVERN-
MENT OWNED CORPORATION.

The United States, by the purchase of the real and personal property,
stock, and bonds of the Alaska Northern Railway Company, under au-
thority of Act March 12, 1914 (Comp. St. §§ 3593a–3593d), became the
owner, not only of the property, but of the corporation as its agent for
governmental and public purposes, and without its consent the corpora-
tion cannot be sued in tort.

In Error to the District Court of the United States for the Third
Division of the Territory of Alaska; Fred M. Brown, Judge.

Action by Frank L. Ballaine against the Alaska Northern Railway
Company, in which the United States intervened.   Judgment for
defendant, and plaintiff brings error.   Affirmed.

For opinion below, see 5 Alaska, 694.

On April 29, 1915, in the District Court for the Territory of Alaska, Third
Division, the Alaska Northern Railway Company sued the Alaska Central
Railway Company and Frank L. Ballaine to declare a trust for the use of the
Alaska Northern Railway Company in and to certain real estate at Seward,
Alaska, the legal title to which was in Frank L. Ballaine. In November, 1915,
after trial, the court dismissed the action, with costs to the defendant therein.
Thereafter, on June 24, 1916, Ballaine brought the present action against the
Alaska Northern Railway Company to recover damages on the ground that
the suit heretofore mentioned was maliciously instituted without probable
cause. The railway company pleaded that the property of the corporation at
the time the action was brought was owned by the United States, and that in
the former suit the company had acted in good faith on the advice of counsel.
Ballaine by reply put in issue the defense of advice by counsel.

Thereafter on October 23, 1916, the United States, by leave of court, inter-
vened and set up that on April 6, 1915, under the Alaska Railroad Act, ap-
proved March 12, 1914, the United States had contracted in writing with cer-
tain proper parties for the purchase of the railway and the real and personal
property of the Alaska Northern Railway Company, and all the stocks and
bonds of that corporation; that such agreement "expressly excluded from
the purchase made by the United States of America from the Alaska Northern
Railway Company any claims of the Alaska Northern Railway Company or of
the vendors in said agreement against any person or persons whomsoever, with
reference to the title of the Seward townsite, otherwise known as United
States surveys 726 north and south, of all of which facts plaintiff had due
notice"; that the United States has paid in full all moneys agreed by it to
be paid under the agreement, and was a bona fide purchaser, owner, and
holder of the stocks, assets, and bonds of the railway company, and has taken
charge and controlled the road in behalf of the United States, and that the
United States never has had any interest in the litigation commenced by the
Alaska corporation on April 29, 1915, against Ballaine and others; and that
that suit was commenced and prosecuted solely for and in behalf of the
former trustees and owners of the Alaska Northern Railway Company.   In
due course Ballaine answered, and set up that the Alaska Northern Railway
Company was operating and maintaining the railroad and that a corporate
organization was then in existence; that the United States, through the Secre-
tary of the Interior, knew of the claim of Ballaine against the railway com-
pany for damages for alleged malicious prosecution prior to the final payment
by the United States for the stocks and bonds of the defendant corporation;

that the United States has not exercised any of the rights of sovereignty in the conduct, operation, and maintenance of the Railway Company, but is engaged in a commercial business in the operation and conduct of the railway, and acquired the assets of the corporation subject to the unliquidated claim of Ballaine for damages sustained by reason of the acts of the former board of directors of the railway company.

The United States demurred to this answer to the complaint in intervention, and on December 3, 1917, the District Court dismissed the complaint of Ballaine against the Alaska Northern Railway Company, upon the ground that Ballaine's action was one sounding in tort, and that the real party defendant is the United States, and that there was no jurisdiction to proceed with the cause. Ballaine then sued out a writ of error.

L. V. Ray, of Seward, Alaska, for plaintiff in error.

William A. Munly, U. S. Atty., of Valdez, Alaska, and Annette Abbott Adams, U. S. Atty., of San Francisco, Cal., for defendant in error and intervener.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The authority of the United States to acquire the railroad came from the Act of Congress approved March 12, 1914, c. 37, 38 Stat. 305 (Comp. St. §§ 3593a–3593d), entitled "An act to authorize the President of the United States to locate, construct, and operate railroads in the territory of Alaska, and for other purposes." The Secretary of the Interior, acting by authority of the President, made the written agreement of April 6, 1915, and one of later date for the purchase of the real and personal property of the railway company and of all the stocks and bonds of the corporation. The purpose of the agreement, was to secure to the United States entire control and ownership, excluding, however, from the property purchased, any claims of the railway company or the vendors against persons with reference to title to the Seward townsite. Thus while, as between the United States and the railway corporation and its vendors, the United States became the owner of the railroad and stock, it did not purchase any claim that the railroad company had against Ballaine for any matter pertaining to the title to the Seward townsite; and Ballaine knew of this agreement. If, under the situation, Ballaine can proceed with this action, and should recover a judgment against the railroad company, he would look for satisfaction to the property held in the name of the corporation. That property, however, is now owned by the United States; hence, if seized on execution, we would have a judgment creditor in an action in tort interfering with the property owned by the United States, held, it is true, in the name of the railroad company, yet so held for account of the United States by and through an agency in the form of a corporation. That the United States cannot be sued for a tort, even though committed by its officers in the discharge of their official duties, is thoroughly well settled. Peabody v. United States, 231 U. S. 530, 34 Sup. Ct. 159, 58 L. Ed. 351; Smith v. Reeves, 178 U. S. 436, 20 Sup. Ct. 919, 44 L. Ed. 1140; Occidental Co. v. United States, 245 Fed. 817, 158 C. C. A. 157; Smith v. Rackliffe, 87 Fed. 964, 31 C. C. A. 328.

To overcome the application of the rule, plaintiff in error argues that in the operation and maintenance of the railroad the United States is carrying on a commercial business, and in such business has, to an extent, abandoned its sovereign capacity. We cannot uphold that view. Congress, in its power to regulate commerce, could construct, or could authorize a corporation or individuals to construct, a railroad, or to buy a railroad, and clearly in the territories has a plenary power to grant franchises, to create a railroad system, and to employ the agency of a corporation as a means of accomplishing such objects. California v. Pacific R. R. Co., 127 U. S. 1, 39, 8 Sup. Ct. 1073, 32 L. Ed. 150. In Luxton v. North River Bridge Co., 153 U. S. 525, 14 Sup. Ct. 891, 38 L. Ed. 808, the court held that Congress could create corporations as appropriate means of executing the powers of government, as, for instance, a railroad corporation, for the purpose of promoting commerce among the states. Indiana v. United States, 148 U. S. 148, 13 Sup. Ct. 564, 37 L. Ed. 401. The Act of March 12, 1914, c. 37, heretofore cited, which authorizes the President to locate, construct, and operate railroads in Alaska, expressly provides that the Alaska railroad is for the settlement of public lands and for transportation of coal for the army and navy, for the transportation of troops, arms, munitions of war, the mails, and for "other governmental and public uses," and to transport passengers and property. The act (section 4) also confers authority upon the President, through such agents as he may appoint or employ, to do all necessary acts, in addition to those specially authorized, to enable him to accomplish the purposes of the act. By section 1 the President is authorized to purchase or acquire other railroads to carry out the purposes of the act, and to employ officers and agents in order to accomplish the purpose of the legislation. Taking all these provisions together, they plainly show that the United States, in acquiring the stocks and bonds and property of the Alaska Northern Railway Company, acted in its sovereign capacity, and in exercising entire control, possession, ownership, and management, has merely employed the corporate organization as an agency through which to execute the purposes of the statute.

Instances of where a state government was carrying on a private enterprise, but where it was held that a suit could not be maintained against the objection of the state, are found in Murray v. Wilson Distilling Co., 213 U. S. 151, 29 Sup. Ct. 458, 53 L. Ed. 742, and Cunningham v. Macon & New Brunswick R. R. Co., 109 U. S. 446, 3 Sup. Ct. 292, 609, 27 L. Ed. 992. Salas v. United States, 234 Fed. 842, 148 C. C. A. 440, cited by plaintiff in error, is to be distinguished. There Burke and Salas were indicted for conspiring to defraud the United States. The United States owned all of the stock of the Panama Railroad Company, and through the Isthmian Canal Commission and its subsistence department food supplies were furnished to the employés on the Isthmus and to the commissary department of the railroad company, which bought and furnished all other supplies. Burke was manager of the commissary department of the railroad. The Court of Appeals was of opinion that the United States had entered into commercial business in the premises and was to be treated

like any other corporation, and that the combination proved on the trial was not one intended to defraud the United States. Here, however, the United States holds the railroad and stock for public purposes under clear statutory authority, and it operates the road in the necessary discharge of its duty to the public, and in our judgment, in this, a civil action, can claim the privileges and immunities of a sovereign. See authorities heretofore cited; Murray v. Wilson Distilling Co., 213 U. S. 151, 29 Sup. Ct. 458, 53 L. Ed. 742.

Our opinion is that the United States has, by the pleadings, shown itself to be the real party in interest, and can claim the immunity set up in the complaint in intervention.

The judgment is affirmed.