### SLOAN SHIPYARDS CORPORATION v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(District Court, W. D. Washington, N. D. October 4, 1920.)

No. 182–E.

1. **United States ⊂⇒78—Not suable for tort of officer.**
   The United States cannot be sued for a tort, though committed by its officers in the discharge of their duties.

2. **Courts ⊂⇒426—United States ⊂⇒125.—Suit against Emergency Fleet Corporation one against United States.**
   The United States Shipping Board Emergency Fleet Corporation, incorporated pursuant to act of Congress under the laws of the District of Columbia, *held* merely an instrumentality created by the United States, acting in its sovereign capacity for executing the purposes of Shipping Board Act Sept. 7, 1916 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8146a et seq.), and a suit against it *held* a suit against the United States, not maintainable in a District Court where the amount involved exceeds $10,000.

In Equity. Suit by the Sloan Shipyards Corporation against the United States Shipping Board Emergency Fleet Corporation. On motion by the United States to dismiss bill. Motion sustained.

This is an action by a corporation of the state of Washington against the United States Shipping Board Emergency Fleet Corporation. It is alleged in substance that the plaintiff was in possession of a well-equipped shipbuilding plant, and of a well-equipped machine shop, for use in the preparation of machinery, appliances, etc., and equipment that was to go into the construc-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion of ships, and on the 18th day of May, 1917, it entered into a contract with the defendant to construct 16 wood cargo-carrying steamers for a consideration named, with payments specified, and that it entered upon the execution of this contract and that it also had under construction 4 full-power motorships, and other vessels, from which, it is alleged, it could realize "a handsome profit"; that the plaintiff caused to be organized the Anacordes Shipbuilding Company, which constructed shipways and shipyards at Anacordes, Wash., so as to enable the plaintiff to speedily comply with its contract with the defendant, and that on December 1, 1917, the plaintiff had on the ways at Anacordes, Wash., and at Olympia, Wash., 6 ships under construction, and 2 additional keels laid, and was entitled to receive large payments in addition to payments theretofore made; that on said day the defendant wrongfully seized the possession and control of the plaintiffs' property at Anacordes and Olympia, and the Capital City Iron Works, owned by the plaintiffs, and retained exclusive control, possession, and management thereof; that prior to this time the plaintiff had contracted for about 15,000,000 feet of timber, and for all the engines and machine equipment, and all the material necessary for the construction of the entire 16 ships "at extremely low and advantageous prices," but after the seizure the defendant canceled all such contracts and purchased other materials at increased prices; that plaintiff was denied access to the books and records of the company and was denied the privilege of participation in the management and control of the business; that construction of the ships was deliberately delayed, extravagant prices were indulged in, and largely increased costs made in the construction of the ships by employment of unnecessary labor—and sets out many elements of damage occasioned to the plaintiff by the defendant, covering 15 pages of typewritten matter, and prays an order enjoining the defendant from removing the books, records, and files of the plaintiff from the offices of the plaintiff at Olympia and Anacordes, and from disposing of any property of the plaintiff, and for an order canceling certain mortgages set out in the complaint, quieting title to the property covered by the mortgages, and for an accounting, and for a decree determining and establishing the profits to which the complainant is entitled under its contract, alleging damage in excess of a million dollars.

The defendant moves to dismiss on the ground that, the suit being against the United States Shipping Board Emergency Fleet Corporation, which is simply an agency of the United States, is a suit against the United States, and therefore not cognizable in this court, in so far as this bill may allege breach of contract, and not cognizable in any court so far as the bill may allege the commission of a tort; that the court is without jurisdiction; that the bill does not state facts sufficient to constitute a valid cause of action; that there is a nonjoinder of parties defendant.

The United States appears "specially" and moves to dismiss on the ground that the action is against the United States in effect, and not cognizable in a court of equity, "but only in the Court of Claims at Washington, D. C., the amount demanded being in excess of $10,000."

George H. Bailey, James Hamilton Lewis, and Kerr & McCord, all of Seattle, Wash., for plaintiff.

Robert C. Saunders, U. S. Atty., of Seattle, Wash., for intervener.

Howard Cosgrove, of Seattle, Wash., for defendant Shipping Board.

NETERER, District Judge (after stating the facts as above). [1] That the United States cannot be sued for a tort, even though committed by its officers in the discharge of their duties, is well settled. Ballaine v. Alaska Northern Ry. Co. (U. S., Intervener) 259 Fed. 183, 170 C. C. A. 251, and cases cited. The relation of the United States to the defendant must be determined by the act creating the defendant, the objects of its creation, and the purposes to which the property is to be used.

268 F.—40

Chief Justice Marshall, in the Dartmouth College Case, 4 Wheat. 518, at page 561 (4 L. Ed. 629), said:

"To determine the character of a corporation, the beneficial purposes to which the property of the corporation is to be used may be considered."

[2] The object and manner of organization and purposes and operation of the defendant are set forth in the Merchant Marine Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8146a–8146t). Concisely stated, the act creates a Shipping Board composed of five members, to be appointed by the President. The board, with the President's approval, is to have constructed and equipped in American shipyards and navy yards, etc., or to lease and purchase, vessels so far as commercial requirements of the trade of the United States may permit, for use as naval auxiliaries or army transports. A corporation may be formed under the laws of the District of Columbia, and have a capital stock not to exceed $50,000,000, the board to subscribe and vote not less than a majority of the stock. The board, with the President's approval, may sell any or all of the stock, but at no time shall the government be a minority stockholder. The board to give public notice of the fact that vessels are offered, and the terms and conditions upon which the contract will be made, and shall invite competitive offers and make full report to the President. The corporation shall stand dissolved at the expiration of five years from the conclusion of the present European War, and all stock of such corporation owned by others at the time of dissolution shall be taken over by the board at a fair and reasonable value, and paid for with the funds to the credit of the board. The liability to be incurred under the provisions of sections 5 and 11 shall not exceed $50,000,000; and the proceeds of the sale of bonds and any proceeds for sales, charters, and leases of vessels and all sales of stock made by the board and of all of the monies received from any source to be covered into the treasury to the credit of the board.

By Act Oct. 6, 1917 (section 251a, Comp. Stat. Annot.), section 5 of Act June 22, 1906, prohibiting the transfer of employees from one executive department to another, or to independent establishments, or vice versa, is made to apply to the United States Shipping Board Emergency Fleet Corporation, which by the act shall be considered a "government establishment for the purposes of this section." Executive Order of July 11, 1917, delegates to the Shipping Board and the Emergency Fleet Corporation the powers granted to the President by the merchant shipping legislation. Act March 1, 1918 (section 8146t, Comp. St. 1918, Comp. St. Ann. Supp. 1919), empowers the United States Shipping Board Emergency Fleet Corporation to purchase, lease, requisition, or otherwise acquire, and to sell or otherwise dispose of, improved or unimproved land, houses, buildings, etc. This act also requires the Fleet Corporation to report to the Congress on the first Monday of December of each year the names of all persons or corporations with whom it has made contracts, and all such subcontractors as may be employed in furtherance of this act, including a statement of purchases and amounts thereof, etc.

The Supreme Court, in The Lake Monroe, 250 U. S. 246, at pages

251, 252, 253, and 254, 39 Sup. Ct. 460, at page 463 (63 L. Ed. 962), sets out the pertinent provisions of the act, and says:

"But at the time of the emergency provision of June 15, 1917, the Shipping Board had been established as a public commission, with broad administrative powers, and subject to definite restrictions, and the Fleet Corporation had been created as its agency, financed with public funds. The emergency shipping legislation evidently was enacted in the expectation that the President would employ the Shipping Board and the Fleet Corporation as its agencies to exercise the new powers, for the Fleet Corporation was mentioned in the act, and it was known to be but *an arm of the Board*." (Italics mine.)

Significance attaches to the fact that the Congress provided that the defendant corporation shall be formed under the laws of the District of Columbia, in view of the fact that the sovereign power of the District of Columbia is lodged in the government of the United States. Metropolitan Ry. Co. v. District of Columbia, 132 U. S. 1, 10 Sup. Ct. 19, 33 L. Ed. 231. The municipality of the District of Columbia is not a state, but a mere agency of the United States, and is invested with only such subordinate powers of local legislation and control as the Congress sees fit to confer upon it.

Justice Bradley, in Metropolitan Ry. Co. v. District of Columbia, supra, said at page 9 of 132 U. S., at page 22 of 10 Sup. Ct. (33 L. Ed. 231):

"It is undoubtedly true that the District of Columbia is a separate political community in a certain sense, and in that sense may be called a state; but the sovereign power of this qualified state is not lodged in the corporation of the District of Columbia, but in the government of the United States. Its supreme legislative body is Congress. The subordinate legislative powers of a municipal character which have been or may be lodged in the city corporations, or in the District corporation, do not make those bodies sovereign. Crimes committed in the District are not crimes against the District, but against the United States."

The intent of the Congress in the agency employed and the directions given, the provisions of the act, and legislation with relation thereto, appear to be conclusive that the United States acted in its sovereign capacity, and in exercising entire control, possession, ownership, and management it has merely employed the corporate organization of its own creation so far as applicable as an instrumentality or "arm," with which to execute the purposes of this Statute, and in so doing it was not divested of its sovereignty.

It is also significant that the act—section 9 (8146e)—specifically exempts vessels "while employed solely as merchant vessels" from the ordinary legal liabilities and subjects them to admiralty jurisdiction. The Lake Monroe, supra. If it was the intention that the defendant was not a mere governmental instrumentality, then the exemption was entirely superfluous.

This case, I think, is plainly distinguishable from U. S. Bank v. Planters' Bank, 22 U. S. (9 Wheat.) 904, 6 L. Ed. 244. In that case the state of Georgia and individuals—citizens of Georgia—engaged in the general banking business. The action was upon a promissory note held by the plaintiff, endorsed by the defendant, and the defendant bank pleaded immunity from suit because of its sovereign character.

The court held that having become a partner in a trading company, the state divested itself of its sovereign character and took that of a private citizen. In the instant case the defendant is not a trading company. The primary purpose of the act was to provide "army transports," and the commercial shipping was incidental. The act is a war measure; emergency is reflected in nearly every sentence. The purpose was to acquire vessels "for use as naval auxiliaries or army transports," and the "navy yards" were to be utilized. Of the great need for transports the Congress was advised, and the public later found out. Every detail of management, relation, and function of the defendant is prescribed and limited in the Marine Act, and the only use made of the incorporation act, the creation of the Congress, was the filing of articles to give it corporate entity as a matter of convenience, and nowhere is there apparent an intention to waive the sovereign privilege. On the contrary, exempting vessels from immunity and submitting them to admiralty seems conclusive that in all things else the sovereignty was asserted and retained.

I have read the decisions of Judge Hand in Gould Coupler Co. v. U. S. Shipping Board (D. C.) 261 Fed. 716, and Judge Page in Lord & Burnham Co. v. U. S. S. B. E. F. Corp. (D. C.) 265 Fed. 955. The opinion of Circuit Judge Hunt in Ballaine v. Alaska Northern Railway Co., 259 Fed. 183, 170 C. C. A. 251, I think is decisive here. Judge Hunt, for the Circuit Court of Appeals for this circuit, said (259 Fed. 185, 170 C. C. A. 253):

"Act March 12, 1914, c. 37, heretofore cited which authorizes the President to locate, construct, and operate railroads in Alaska expressly provides that the Alaska Railroad is for the settlement of public lands and for transportation of coal for the army and navy, for the transportation of troops, arms, munitions of war, the mails, and for 'other governmental and public uses,' and to transport passengers and property. The act (section 4) also confers authority upon the President, through such agencies as he may appoint or employ, to do all necessary acts, in addition to those especially authorized, to enable him to accomplish the purposes of the act. By section 1 the President is authorized to purchase or acquire other railroads to carry out the purposes of the act, and to employ officers and agents in order to accomplish the purpose of the legislation. Taking all these provisions together, they plainly show that the United States, in acquiring stocks and bonds and property in the Alaska Northern Railway Company, acted in its sovereign capacity, and in exercising entire control, possession, ownership, and management, has merely employed the corporate organization as an agency through which to execute the purposes of the statute."

This court in U. S. v. Union Timber Products Co., 259 Fed. 907, held that a conspiracy to defraud the Shipping Board is a fraud on the United States. That case, however, is distinguished from the issue here. Since the amount involved is more than $10,000, this court has not jurisdiction. I also think that the Anacordes Shipbuilding Company and the Capital City Iron Works should be parties to the action. The motions to dismiss are granted.

I have conferred with Judge CUSHMAN of the Southern division, and he authorizes me to say that he concurs in this decision.