## ASTORIA MARINE IRON WORKS v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(District Court, D. Oregon. February 14, 1921.)

### No. 8687.

Courts ⊜426—Emergency Fleet Corporation not subject to suit in District Court on claim exceeding $10,000; "governmental agency."

The United States Shipping Board Emergency Fleet Corporation, as a governmental agency, *held* not subject to suit in a District Court, where the amount involved exceeds $10,000.

At Law. Action by the Astoria Marine Works against the United States Shipping Board Emergency Fleet Corporation. On motion to remand to state court and demurrer to complaint. Motion to remand denied, and demurrer sustained.

Cake & Cake and L. A. Liljeqvist, all of Portland, Or., for plaintiff.
Lester W. Humphreys, U. S. Atty., Hall S. Lusk, Asst. U. S. Atty., and MacCormac Snow, all of Portland, Or., for defendant.

WOLVERTON, District Judge. This is an action to recover against the United States Shipping Board Emergency Fleet Corporation for an alleged breach on the part of the Fleet Corporation of a contract theretofore entered into by and between the parties, whereby the plaintiff, in consideration of the observance of certain conditions and stipulations made and subscribed on the part of defendant, agreed to maintain a suitable site at Astoria, Or., and to construct a marine railway of a lifting capacity of 4,000 tons, and a repair plant, and to install them upon the site, with all necessary power, heat, lighting, sanitary, and other accessories and facilities, with the privilege on the part of the Fleet Corporation of taking over the title to the plant and all the materials and equipment therefor.

The cause comes here on removal from the state court, and a motion to remand is submitted on the part of plaintiff, and on the part of defendant a demurrer to the several causes of action. The motion to remand will be denied on the authority of Rosenberg Iron & Metal Co. v. U. S. Shipping Board Emergency Fleet Corporation (recently decided by this court) 271 Fed. 956.

The demurrer presents the question whether the Fleet Corporation is subject to be sued in this court; the amount in controversy being in excess of $10,000. It is insisted that the Fleet Corporation is a government utility, exercising limited powers of sovereignty, and that the cause here sought to be maintained is a claim against the government, which can be proceeded with for recovery only in the Court of Claims.

That the Shipping Board is a governmental agency, endowed with certain defined governmental powers, cannot be questioned. This board, by section 11 of the Act of September 7, 1916 (39 Stat. 728 [Comp. St. § 8146f]), is authorized, when in its judgment such action is necessary to carry out the purposes of the act, to form one or more corporations under the laws of the District of Columbia, for the purchase, construction, equipment, lease, charter, maintenance, and operation of merchant vessels in the commerce of the United States. The capital stock is limited to $50,000,000, for which the board is authorized to subscribe not less than a majority. At no time shall it be a minority stockholder. A corporation so formed is limited in the period of its existence to five years from the conclusion of the present war. Provision is made for taking over by the board all stock owned by others at the time of dissolution, to be paid for out of the funds to its credit, and for covering into the board the proceeds of the sale of bonds, charters, leases of vessels, all sales of stock made by the board, and all moneys received from any source.

In pursuance of the powers bestowed by section 11, the Shipping Board caused to be organized (April 16, 1917) the corporation known as the United States Shipping Board Emergency Fleet Corporation, with $50,000,000 capital stock, all owned by the United States. It was officered by the commissioners of the Shipping Board and their nominees, and was but an operating agency of the board. The Lake Monroe, 250 U. S. 246, 251, 252, 39 Sup. Ct. 460, 63 L. Ed. 962.

The corporation, as its name implies, was created to meet emergencies arising purely out of war conditions, and for governmental purposes, to enable the government to cope successfully with the exigencies

incident to war. Congress has continuously so treated it. By the Act of July 1, 1918 (Comp. St. Ann. Supp. 1919, § 8146fff), it authorized and directed the Secretary of the Treasury to cause an audit to be made of the financial transactions of the Fleet Corporation, under such rules and regulations as he should prescribe.

By the Act of March 1, 1918, 40 Stat. 438 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8146t), Congress authorized the corporation, within the limits of $50,000,000, to purchase, lease, requisition for temporary use, or acquire by condemnation or otherwise, land or any interest therein suitable for construction thereon of houses for the use of employees, etc., and to make just compensation therefor in such amounts as it might determine; providing that, if the amount so determined was unsatisfactory, the corporation should pay 75 per cent. thereof, and the claimant would thereupon be entitled to sue the United States to recover such further sum as would be required to equal just compensation for the property or interest therein so taken, in the manner provided by section 24, par. 20, and section 145 of the Judicial Code (Comp. St. §§ 991, 1136). This act further requires the Fleet Corporation to report to Congress each year the names of all persons and corporations with whom it has made contracts and of such subcontractors as may have been employed in furtherance of the act.

By the Act of June 15, 1917, 40 Stat. 182, the President is authorized to do many things touching the requisition of ships, plants, etc., and, among other things, it is provided that the President may exercise the power and authority thus vested in him to expend the moneys appropriated, through such exigencies as he may determine from time to time:

"Provided, that all money turned over to the United States Shipping Board Emergency Fleet Corporation may be expended as other moneys of said corporation are now expended." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115 1/16 d.

By this piece of legislation the President may determine the amount to be paid for the property requisitioned, which, if not satisfactory, will authorize the owner to sue the United States as provided in the last act above noticed. Such authority to sue the United States is contained in the amendatory Act of July 18, 1918, c. 157, 40 Stat. 913, 915, extending the powers of the President.

These specific authorizations to sue the United States I regard as designed by Congress as exceptions to the general rule that the United States cannot be sued except by its own consent. The Act of October 6, 1917, c. 79, 40 Stat. 383 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 251a) declares that the corporation shall be considered as a government establishment within the purview of section 5 of the act inhibiting the transfer of employees from one department to another (Comp. St. § 251).

There would seem to be a legislative purpose in requiring the Fleet Corporation to be incorporated under the laws of the District of Columbia, which municipality is a mere agency of the general government, the sovereign powers of which are lodged in the government of the United States. Metropolitan Railroad Co. v. District of Columbia, 132 U. S. 1, 10 Sup. Ct. 19, 33 L. Ed. 231. The fact that the Fleet Corporation

is accorded the power to sue and be sued to my mind does not affect the question, as it has access to the courts for the enforcement of all claims not in excess of $10,000, and to the Court of Claims involving amounts in excess of that sum.

Another incident that appeals for consideration is that, by section 9 of the original Act of September 7, 1916 (Comp. St. § 8146e), vessels while employed solely as merchant vessels are subjected to all laws, regulations, and liabilities governing merchant vessels, whether the United States be interested in them or not, and thus are subjected to the ordinary remedy of libel in rem in admiralty. This denotes an exception to the general intendment of Congress that other vessels shall not be so dealt with.

So we find that the public acts of Congress, wherever dealing with the Shipping Board and the Fleet Corporation, have seemed to recognize the condition that the Fleet Corporation is a government agency, organized for government purposes, and within its limitations to exercise the sovereign powers of the United States. The Supreme Court, in so far as it has spoken respecting the Fleet Corporation, has recognized it as "an arm of the board." Its language is as follows:

"But at the time of the emergency provision of June 15, 1917, the Shipping Board had been established as a public commission, with broad administrative powers and subject to definite restrictions, and the Fleet Corporation had been created as its agency, financed with public funds. The emergency shipping legislation evidently was enacted in the expectation that the President would employ the Shipping Board and the Fleet Corporation as its agencies to exercise the new powers, for the Fleet Corporation was mentioned in the act, and it was known to be but an arm of the board." The Lake Monroe, supra.

If an arm of the board, it is likewise an arm of the government, for doing the things in behalf of the government assigned to it. It is in no sense a private corporation, but is a purely government organization, to meet war emergencies, and while so acting, exercises the functions of the sovereign state. True, private parties may hold stock in the entity; but the control is lodged absolutely in the government, through its officers and agents. I am impelled to the conclusion that the Fleet Corporation is a governmental entity, created to exercise governmental functions within its restricted limitations, and that for its acts performed in that capacity the United States is not suable, except in the Court of Claims, involving an amount in excess of $10,000. Sloan Shipyards Corp. v. U. S. Shipping Board (D. C.) 268 Fed. 624.

Neither United States v. Strang et al., 254 U. S. ——, 41 Sup. Ct. 165, 65 L. Ed. ——; nor Salas v. United States, 234 Fed. 842, 148 C. C. A. 440, is opposed to this view. The former case must be read in view of section 41 of the Criminal Code (Comp. St. § 10205); the court holding that the defendants were not agents of the United States within the true intendment of that section. In the latter case the court exonerated the accused, because the United States was then engaging in a commercial business, and not in its sovereign capacity. I am aware that other District Courts are not in accord with this conclusion, but I am unable to agree with them.

Demurrer sustained.