KELLEY, MAUS & CO. v. SIBLEY.

(Circuit Court of Appeals, Seventh Circuit.  April 11, 1905.)

No. 1,097.

1. SALES—SEVERAL CONTRACT—CONSTRUCTION.
Negotiations for the sale of bolts at beginning referred only to "machine bolts," and, in answer to an inquiry with respect to the quantity of machine bolts the seller could furnish, he, for the first time, suggested that he had another contract for "carriage bolts" with a different manufacturer, and could also enter an order for a reasonable amount of carriage bolts, but could not guaranty prompt shipment, after which the buyer accepted the seller's offer as to machine bolts, and stated that it assumed that the price for the carriage bolts was the same, and on that assumption ordered a large number, which, however, the buyer required to be put up in packages, after which the seller replied that the buyer's assumption as to the price of the carriage bolts was correct. *Held*, that the contract for the bolts, if any, was several as to each character of bolts.

2. SAME—OFFER AND ACCEPTANCE.
An acceptance of an order to sell a quantity of machine bolts was not rendered conditional, and therefore insufficient to constitute a contract, by an expression in the buyers' letter of acceptance that it was not of so much importance to have such bolts put up in packages, but that they would like to get at least the smaller sizes in that way if possible.

3. SAME.
An absolute acceptance of a seller's offer to sell bolts was not affected by a subsequent communication informing the buyer that he assumed no responsibility in the sale, but simply procured the bolts for the buyer provided he could purchase them as he had been assured he could do, which statement was not assented to by the buyer.

4. SAME.
Defendant's offer for the sale of carriage bolts was accepted, with the condition that the bolts must be put up in packages duly labeled, and contained a request that the order should be placed with the factory immediately, and plaintiffs advised how soon they could look for shipment. Defendant replied, without referring to the condition that the bolts should be put up in packages, that the price was the same as other bolts purchased, and added that he assumed no responsibility in the sale, but would simply get the bolts for plaintiffs provided he could purchase them as he had been assured he could do. *Held*, that plaintiffs' acceptance of defendant's offer was conditional, and insufficient to constitute a contract binding defendant to furnish such bolts at all events.

5. SAME—SELLER OR AGENT.
Where defendant proposed to sell plaintiffs an unlimited quantity of machine bolts at 80 per cent. off, f. o. b. seller's place of business, at 5 per cent. commission, which bolts he was to get under a contract which he had with nonresident manufacturers, and plaintiffs replied accepting the offer, and requesting that defendant place the order with the factory, and advise plaintiffs how soon they could look for shipment, defendant was a seller of the bolts, and not plaintiffs' agent to buy the same.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

It is sought to reverse a judgment sustaining a demurrer to the amended declaration of the plaintiff in error, who was plaintiff below.  The declaration contains two counts.  The first count declares upon a contract for the

sale and delivery by the defendant to the plaintiff of 750,000 machine bolts; the second count upon a contract for the sale and delivery of 250,000 carriage bolts. The question involved is whether the facts and correspondence set out in the declaration constitute a valid and binding contract between the parties.

The declaration shows that the plaintiff in error, a corporation, was engaged in business in the city of Chicago, dealing in hardware of various kinds. The defendant was engaged in the business of selling hardware at wholesale and retail at South Bend, Ind. On June 18, 1899, a traveling salesman of the plaintiff called upon the defendant at his place of business, and the defendant informed him that he was prepared and would sell to the plaintiff such quantity of machine bolts as the plaintiff might desire to purchase. The bolts are made of iron, are of various sizes, are used in the construction and operation of machinery, and are quoted and sold by the trade upon the basis of a list price, with certain deductions or discounts. The list price is an arbitrary one established by the trade. The real price is ascertained by deducting the discounts or percentages. The defendant's proposition was that he would sell to the plaintiff the machine bolts in question at a discount of 80 per cent. from the list price, plus 5 per cent. as a commission or profit to himself. This proposition was communicated to the plaintiff, and resulted in the following correspondence.

Plaintiff to defendant, June 19, 1899: "Our Mr. Mitchell informs us you have a quantity of machine bolts to sell for which you will accept immediate specifications at 80% off, f. o. b. South Bend. Our Mr. Lee is at present out of the city. We will communicate with him and advise you further in the course of a few days as soon as we hear from him."

Plaintiff to defendant, June 21, 1899: "Referring to your proposition to Mr. Mitchell to furnish us with what machine bolts we may want at 80% off f. o. b. South Bend, will you please let us know by return mail what quantity of machine bolts you would care to furnish us, also what make they are and how promptly you could make delivery of same."

Defendant to plaintiff, June 22, 1899: "Your favors of the 19th and 21st inst. are both at hand. My proposition with your Mr. Mitchell was, that I could sell you an unlimited quantity of machine bolts at 80% off, f. o. b. So. Bend, and that I would charge you 5% commission on same. These people are getting reasonable prompt shipments. I should of course get these goods under a contract, and you will understand the necessity of not mentioning this fact. The bolts would come from the Upson Nut Co., of Cleveland, O., the price is spot cash, 10 days from date of invoice received from factory. I am informed that I can get any quantity up to 500,000 or even 1,000,000, but specifications must be in promptly, for same, and this contract expires July 1st. I also have another contract on carriage bolts at same price, but am not getting prompt shipments. This contract applies to Oliver Bros., or, rather, Oliver Iron & Steel Co., also, to the Indiana Iron Co. I can enter an order for a reasonable amount with these people, but cannot guarantee prompt shipment on same."

Plaintiff to defendant, June 24, 1899: "Your favor of the 22nd inst. duly received. We are sending you in this mail specifications for machine and carriage bolts based on the proposition you made our Mr. Mitchell. We assume from your letter the same price will apply to both the machine and carriage, viz.: 80 discount F. O. B. South Bend plus 5% commission to yourself. In this connection we would inform you the carriage bolts must be put in packages duly labeled. We could not use them in any other way. It is not of so much importance to have the machine bolts put up in packages, but we would like to get at least the smaller sizes in that way if we could. Kindly place this order with the factory and advise us how soon we may look for shipment."

There was inclosed in this letter an itemized list or statement, or specification, showing the quantities of each size of carriage and machine bolts desired, amounting to 750,000 machine bolts and 250,000 carriage bolts.

Defendant to plaintiff, June 26, 1899: "Your favor of the 24th inst. enclosing lists for carriage and machine bolts, is at hand. I have sent specifications in for these goods, and trust to be able to get same for you. I will use

every effort to get them as promptly as possible. Your interpretation of the terms is correct, i. e., 80% discount, f. o. b. South Bend, plus 5% commission for myself. You will of course understand that I assume no responsibility in this sale, and simply get them for you in this way, provided I can purchase them, as I have been assured that I could."

The declaration avers that the provisions contained in the plaintiff's letter of June 24th respecting the manner of packing carriage bolts were usual and ordinary, and were mere packing or shipping directions, indicating the usual and ordinary method in which such bolts were packed for shipment and sale; that the defendant never objected to the requirement that carriage bolts must be put up in packages duly labeled, or to its suggestion that it would like to have the smaller sizes of machine bolts packed in the same way. The plaintiff never at any time assented or agreed to the concluding clause of the defendant's letter of June 26, 1899, but insisted that the acceptance of the order was valid and that the contract was complete. None of the machine bolts was ever shipped to the plaintiff, and but 74,000 of the carriage bolts, the latter being paid for in accordance with the terms of the contract. The declaration also avers that notwithstanding the readiness and willingness of the plaintiff to accept and receive the bolts and to pay for the same, the defendant has refused to deliver any other than the 74,000 carriage bolts specified, and the suit is brought to recover damages sustained by reason of violation of the contract.

William Brace, for plaintiff in error.

Nathan G. Moore, for defendant in error.

Before JENKINS and BAKER, Circuit Judges, and HUMPHREY, District Judge.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

It is undoubtedly true that a mere proposal by one constitutes no bargain of itself. It can only become binding when accepted unconditionally by the other. If the accepting party affixes a condition, modification, or change not contained in the original proposal, this amounts in law to a rejection of the offer as made, and is in fact a new proposal, not effectual until assented to by the first proposer. Carr v. Duval, 14 Pet. 77, 82, 10 L. Ed. 361; Minneapolis & St. Louis Railway v. Columbus Rolling Mill, 119 U. S. 149, 151, 7 Sup. Ct. 168, 30 L. Ed. 376. So that the question here comes down to this: Was there an absolute acceptance by the plaintiff in error of the offer of the defendant in error? Or, if there was a qualified acceptance, was that qualification in turn assented to by the defendant in error? These questions must be considered separately with respect to the machine bolts and with respect to the carriage bolts; for, as we view the transaction, there were in effect two engagements, and the case does not fall within the decision in National Bank v. Hall, 101 U. S. 43, 50, 25 L. Ed. 822, that "where a contract is a unit, and left uncertain in one particular, the whole will be regarded as only inchoate, because the parties have not been ad idem, and therefore neither is bound." The negotiations at their commencement had reference only to the sale of machine bolts. In the letter of June 22d, in answer to the inquiry with respect to the quantity of machine bolts the defendant could furnish, he for the first time suggests that he had another contract for carriage bolts with a party other than the one with whom he had contracted

for machine bolts; that he could enter an order for a reasonable amount of carriage bolts, but could not guaranty prompt shipment. The plaintiff's letter of June 24th accepts the offer with respect to machine bolts, and states that it is assumed that the price of carriage bolts is the same, and upon that assumption orders 250,000 carriage bolts, which must be put up in packages duly labeled, as plaintiff could not use them in any other way. The defendant's letter of June 26th states that that assumption as to the price of carriage bolts is correct. We think this correspondence evidences two distinct engagements, not interdependent. The defendant had offered to sell machine bolts at a specified price. In answer to an inquiry he states the quantity. He states specifically in writing the offer which he had made verbally. He then suggests that he could also furnish carriage bolts, without specifically naming the price he would charge for them, although he states that his contract for those was at the same price as the machine bolts. He names the party with whom he had contracted, and states that he could enter an order for a reasonable amount of them, but could not guaranty prompt shipment. The plaintiff's letter of the 22d is a clear acceptance of the offer with respect to the machine bolts, unless the suggestion with respect to the packing of them is a condition, which we will consider hereafter. It was not an absolute acceptance of the suggestion or offer with reference to the carriage bolts, because neither the price nor the quantity had been specifically stated by the defendant; but an order is made for them conditioned upon the price being the same and upon their being put up in packages duly labeled. We should therefore scrutinize this correspondence as to machine bolts and carriage bolts separately, and ascertain if there was an unconditional sale as to either or both.

First, as to the machine bolts. The verbal proposition by the defendant was that he could sell the plaintiff an unlimited quantity of machine bolts. The defendant's letter of the 22d of June distinctly so states, and adds that he is informed that he could get any quantity up to 500,000 or even 1,000,000. That offer is as distinctly accepted in the plaintiff's letter of June 24th. The expression, "It is not of so much importance to have the machine bolts put up in packages, but we would like to get at least the smaller sizes in that way if we could," does not impose a condition, but is a simple request. The acceptance of the order is in no way made dependent upon compliance with the request. There being then an absolute offer to sell and an absolute acceptance of the offer, the statement in the defendant's letter of the 26th of June, that "you will of course understand that I assume no responsibility in this sale, and simply get them for you in this way, provided I can purchase them as I have been assured that I could," if it is referable at all to the machine bolts, is unavailing to change the terms of this accepted proposal. One party to a contract cannot modify its terms without the consent of the other party. He had made the offer to sell; he had stated that he had a contract with parties under which he would have the goods; and that he could sell an "unlimited quantity," or any amount, up to 1,000,000. He had made no question of his

ability to deliver. The statement in his letter of June 22d, that as to carriage bolts he could enter an order with those from whom he was to obtain them, but could not guaranty prompt shipment, clearly shows that as to the machine bolts he made no question of his ability to deliver and to perform his contract, and made no such condition in his offer. That offer having been accepted, he could not afterward qualify his liability or absolve himself from responsibility.

Second, as to the carriage bolts. The defendant stated in his offer of June 22d that he had a contract for carriage bolts, but was not getting prompt shipment; that as to those he could enter an order for a reasonable amount with the manufacturers, but could not guaranty prompt shipment. The plaintiff's letter of June 24th assumed that the same price would be asked by the defendant for the carriage bolts as for the machine bolts, then states that the carriage bolts must be put up in packages duly labeled, and adds, "Kindly place this order with the factory and advise us how soon we may look for shipment." Up to this time there had been no statement of the quantity that the defendant would undertake to furnish or the price that he would ask the plaintiff; but in his letter of the 26th, without referring to the condition that the carriage bolts should be put up in packages duly labeled, he accedes to the terms of the sale with reference to price, and adds, "You will of course understand that I assume no responsibility in this sale, and simply get them for you in this way, provided I can purchase them as I have been assured that I could." He had indeed stated in his previous letter that he had a contract with the manufacturer, but that he would not guaranty prompt shipment; and in his letter assenting to the price stated by the plaintiff he qualifies the offer with a statement that he assumes no responsibility, and simply gets them for the plaintiff provided he could purchase them as he had been assured he could. There had been up to the date of this letter no absolute offer and no absolute acceptance of an offer. The negotiations were in an inchoate state. The offer being thus restricted as to liability on the part of the defendant, we are of opinion that if there was acceptance of the offer at all, as indicated by subsequent delivery and receipt of the goods, it was an acceptance upon the terms stated in that letter, namely, that the defendant was not to be responsible for nondelivery of the carriage bolts, but that the plaintiff must take the risk of delivery under the manufacturer's contract with the defendant.

It is insisted, however, that these contracts are not contracts of sale, but contracts evidencing agency only. This contention is predicated chiefly upon the use of the word "commission." Undoubtedly that word is usually employed to mean "the compensation allowed agents, factors, executors, trustees, receivers, and other persons who manage the affairs of others in recompense for their services." Bouvier's Law Dictionary, 340. Standing alone, the expression may be strong to show an agency. But in placing a construction upon this correspondence we must have regard to the entire agreement to determine the meaning of any part of it. Union

Stock Yards & Transit Company v. Western Land & Cattle Company, 7 C. C. A. 660, 59 Fed. 49. The rule by which courts should be governed in ascertaining the intent and meaning of a contract is stated in Herryford v. Davis, 102 U. S. 235, 243, 26 L. Ed. 160. It does not depend upon "any name which the parties may have given to the instrument, and not alone on any particular provisions it contains disconnected from all others, but on the ruling intentions of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for." Within this rule of construction, is it possible to regard the defendant as an agent of the plaintiff? In his letter of June 22d the defendant states that his proposition was that "I could sell you an unlimited quantity of machine bolts at 80% off, f. o. b. So. Bend, and that I would charge you 5% commission on same. * * * I should of course get these goods under a contract, and you will understand the necessity of not mentioning this fact." He urges promptness in forwarding the specifications, as his contract with the manufacturer expires July 1st. He states that he also had another contract for carriage bolts with other parties. Does an agent offer to sell to his principal the goods which he is employed to purchase? Can he act as agent for the proposing purchaser with respect to goods which he himself had contracted to purchase from another? The price of the goods was to be paid to him, not to the manufacturer. The substance of his correspondence is that he had contracted with the manufacturers mentioned by him for the sale to him of these bolts, presumably at the list price less 80 per cent. discount. He proposed to sell these goods to the plaintiff at the price he was to pay for them, plus 5 per cent. as profit to himself. He calls this "commission." It was not commission, it was a profit; and the misuse of the term cannot convert into an agency what was in fact a sale. We are to look at the essential nature and preponderating features of the letters and not at particular expressions in isolated parts. Misfitting or misleading names may be easily applied, but they cannot be permitted to change the legal nature of a contract. Presumably under his contracts with the manufacturers the goods were deliverable to him at the place of manufacture in Ohio. He undertook to deliver them to the plaintiff free on board cars at South Bend. If this were a contract of agency, and the transaction was simply the placing of an order by the plaintiff with the manufacturers through the agency of the defendant, there would have been no such provision in the contract. They would have been shipped directly from the manufacturer to the plaintiff. If the defendant were simply the agent of the plaintiff to purchase these goods, why should the agent speak of his guarantying prompt shipment? The expression in the plaintiff's letter of June 24th, "Kindly place this order with the factory and advise us how soon we may look for shipment," does not import an agency. Under the defendant's offer to sell, the plaintiff, knowing that the defendant had contracted with certain manufacturers for the delivery to him of these bolts, sent to the defendant the specifications. The plaintiff by this expression, common in business correspondence, merely sought for

expedition in the fulfillment of the contract. Looking at this correspondence from the four corners of it, it is inconceivable to us that any principle of agency can be applied to it.

The judgment is reversed and the cause remanded, with direction to the court below to overrule the demurrer with respect to the first count of the amended declaration, and to sustain it with respect to the second count.