### EICHBERG v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(Court of Appeals of District of Columbia. Submitted March 7, 1921. Decided June 6, 1921.)

#### No. 3447.

1. **Reference ⬅️24—Court has inherent power to refer case with consent of the parties.**

   A court has power with consent of the parties to refer a case pending before it for the ascertainment of the facts and the pronouncement of the law.

2. **Reference ⬅️24—Reference without objection may be considered as reference by consent.**

   Reference by consent may be made either by written stipulation or by an order agreed to in open court, and a reference made without objection by the parties may be treated as equivalent to a reference by consent.

3. **Reference ⬅️8(1)—Code provision in law actions applies only to mutual accounting.**

   Code of Law, § 254, providing for reference of actions at common law founded upon account, applies only to actions wherein a mutual accounting between the parties is involved.

4. **Courts ⬅️352—Jury ⬅️31(8)—Federal courts have inherent power to make references in common-law actions; compulsory reference to determine issue not authorized.**

   In the federal courts inherent power resides to make references in actions at law to the same extent as in equity, though a compulsory reference to determine the issues is impossible in such courts because of Const. Amend. 7.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Reference ⇔3—Statute authorizing reference in case of mutual accounting does not prohibit reference in other cases.**

Code of Law, § 254, authorizing reference in common-law action founded on account, does not exclude references in other actions at law under the inherent power of the court.

**6. Reference ⇔99(6)—Auditor's report without exception is prima facie evidence before jury.**

Under a general submission of issues in a common-law action to an auditor, the auditor's report, when admitted on trial before the jury, is prima facie evidence, in the absence of exceptions, both of the facts and of the conclusions of fact therein contained.

**7. Reference ⇔102(4)—Admission of report in evidence before jury is acceptance by court.**

The admission of auditor's report in evidence before the jury amounts to an acceptance of the report by the court.

**8. Reference ⇔100(4)—Exceptions to auditor's report must correspond to issues made by pleading.**

The exceptions to an auditor's report in a common-law action, to be sufficient to avoid judgment on the report, must respond to the original issues made by the pleadings, as further defined and limited by the approved findings of the auditor.

**9. Reference ⇔100(4)—Exceptions disputing auditor's report on facts raise issue for trial by jury.**

Proper exceptions to an auditor's report in a common-law action, in so far as they dispute the findings of fact by the auditor, create issues to be submitted to the jury, on which the trial will proceed in all respects as if no reference or report had been made.

**10. United States ⇔125—Emergency Fleet Corporation is not agency of government exempt from suit.**

The Emergency Fleet Corporation is not such an agency of the government as to render it immune from suit.

**11. United States ⇔125—Emergency Fleet Corporation is separate entity, notwithstanding delegation of authority by President.**

The Emergency Fleet Corporation is an entity separate from the government, notwithstanding the delegation by the President of authority to exercise a portion of the power granted to him under Act June 15, 1917, and the delegation of such authority does not render the corporation immune from suit.

**12. Reference ⇔100(4)—Exceptions to auditor's report must be precise and definite.**

Exceptions to report of an auditor must be specific, and point out with the utmost care the particular point to which exception is made.

**13. Sales ⇔22(4)—Correspondence held to show acceptance of offer notwithstanding request for larger shipments.**

An exchange of letters and telegrams between a lumber company and the Emergency Fleet Corporation, whereby the lumber company agreed to furnish a stated quantity of timber each month, which offer was accepted by a telegram and letter, establishes a contract for the furnishing of the timber, notwithstanding a request in the letter of acceptance that more timber be furnished each month than was stated in the offer.

**14. Corporations ⇔432(5)—Party contracting with purchasing agent need not prove agent's authority to bind corporation.**

A party contracting with the purchasing agent of the Emergency Fleet Corporation can rely on the agent's authority to bind the corporation, and need not prove the agent had such authority in an action against the corporation for breach of the contract.

Smyth, Chief Justice, dissenting in part.

⇔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the Supreme Court of the District of Columbia.

Action by Maurice H. Eichberg, trading as the National Timber Company, against the United States Shipping Board Emergency Fleet Corporation for damages resulting from an alleged breach of contract. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Ernest W. Roberts and Clinton Robb, both of Washington, D. C., for appellant.

J. E. Laskey and C. W. Arth, both of Washington, D. C., for appellee.

VAN ORSDEL, Associate Justice. This is a suit for damages resulting from an alleged breach of contract. The contract consisted of the following proposal, submitted on August 2, 1917, by appellant, hereafter, for convenience, referred to as plaintiff:

"United States Shipping Board Emergency Fleet Corporation, Washington, D. C.:

"We will furnish two (2) schedules per month, as per attached sheet, at prices set opposite each item. Prices understood to be f. o. b. loading point, inspection at loading point as required; payments to be arranged at the time of inspection.

"Stock to be sound, square edge, water oak or white oak, and to be inspected according to the rules of the Hardware Manufacturers' Association for sound and square edge timber, except that 1″ shall be allowed and paid for in excess of the sizes specified, and further, in case of any flitches, the stock shall be measured as an average of both faces inside the bark.

"It is possible that, after the writer returns to Alabama, and has organized the necessary crews to get this matter out, we may find that we can produce a greater quantity than herein submitted. In such a case we will be pleased to advise you of the fact and get out a greater number of schedules if required.

"Yours truly, National Timber Company."

Defendant Fleet Corporation, on August 3, 1917, through its purchasing agent, telegraphed plaintiff as follows:

"As per our conversation yesterday, you may proceed to make arrangements to get out enough timber for twenty schedules as per list furnished. Writing you to-day. R. E. Wood, "Emergency Fleet Corporation."

The letter referred to was as follows:

"August 3, 1917.

"Mr. M. H. Eichberg, National Timber Company, Mobile, Ala.—My Dear Mr. Eichberg: Timber Schedules. We desire you to get out 20 schedules as per the list you recently furnished us, at the rate, if possible, of 4 schedules per month. Mr. Haynen will see you in Mobile within the next few days.

"Yours very truly, R. E. Wood, General Purchasing Officer."

It is alleged that, in pursuance of this agreement, plaintiff expended "large sums of money in securing and providing additional necessary machinery, materials and labor for performing said contract," and that defendant, on the 21st day of August, 1917, without any just cause, canceled in writing said contract, to plaintiff's damage in the sum of $117,786.27.

Defendant pleaded (1) that the Fleet Corporation is a governmental agency, and its acts were the acts of the United States; and (2) that

"defendant did not promise as alleged." Plaintiff demurred to the first plea, which demurrer was sustained by the court. Under leave of court, two efforts were made to amend this plea; but in each instance the court, upon demurrer of plaintiff, ruled out the amended plea. Whereupon defendant elected to proceed with the cause upon the pleadings as they stood. The court then made the following order:

"Upon consideration of the motion of plaintiff filed herein by his attorneys. it is ordered that this cause be and the same is hereby referred to the auditor of this court, to audit and state the accounts and dealings between the parties herein."

No objection was interposed by defendant to the order of reference. The case was heard by the auditor upon the testimony of witnesses produced on behalf of both plaintiff and defendant. In a full and complete report, he found for plaintiff in the sum of $116,346.13, with $11,138.10 interest. On filing the report, exceptions thereto were filed by defendant on the following grounds:

(1) That the Shipping Board is an agency of the United States, and this is, in effect, a suit against the United States.

(2) That, under the act of Congress and the order of the President, the Shipping Board is an agent of the United States, and plaintiff contracted with it, knowing that the United States was the principal, and alone liable upon the contract.

(3) "(a) Because the alleged schedules of damage are wholly computed of speculative, prospective, and uncertain profits, not flowing from any labor or investment of capital, as in the said report and schedules appears, but from mere estimates of the difference between cost and sale price, without evidence or assumption of the ownership or availability of material.

"(b) Because the said schedules of expectant profits and damages take no account of materials on hand or available, or the value thereof at the time of the alleged breach of contract, and without inclusion of reductions of alleged damages, or proof of any efforts to reduce the same.

"(c) Because the defendant was wholly dependent upon the floating of logs through unnavigable streams, particularly the Escambia river, which frequently, particularly during the periods covered by the contract, was so low in water flow as to provide at intervals less water than 18 inches above the sand bars therein, of all of which exceptant is informed by the independent evidence of witnesses, who it expects to testify thereto, and by the specific admissions of the plaintiff.

"(d) Because the plaintiff's stock of timber was wholly inadequate to produce the requisite timber, whereby he was dependent upon two small sawmills near Bluff Springs and McDavid, Fla., and not to exceed six hewers of timber, which the defendant expects to prove by documentary evidence in its possession and by the evidence of circumstances, and the independent evidence of witnesses, as well as the admissions of the plaintiff, by which evidence of the character set forth the defendant expects to establish that the losses of the plaintiff do not exceed the sum of six thousand ($6,000) dollars.

＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊

"(f) Because the plaintiff's evidence wholly fails to establish any binding or definite subcontracts, or any responsibility or liability or loss on account of same."

Exception (e) relates to the defective character of the timber at plaintiff's source of supply, and sets forth the rejection of certain timber under inspection. Exception (g) is in effect that the contract was conditional upon plaintiff's securing the approval of the American Bureau of Shipping for the substitution of water oak for white oak, which, it is alleged, plaintiff represented could safely and practically

be done; that the contract was made relying wholly upon this statement and representation; and that plaintiff failed to secure the approval as agreed, and as a result defendant, on August 22, 1917, canceled the contract.

When the exceptions were filed, counsel for plaintiff moved the court to confirm the report of the auditor and enter judgment thereon "for want of proper and sufficient exceptions in law to said report." This motion was denied, and the court struck out exception No. 1, and ordered exceptions Nos. 2 and 3 calendared for trial by jury. Objections were made by plaintiff to the submission of the case to a jury, which were overruled. When the jury was impaneled and sworn, certain stipulations of fact made at the hearing before the auditor were introduced by counsel for plaintiff, the chief of which was that the contract was made and canceled by duly authorized agents of the Fleet Corporation.

Counsel for plaintiff then introduced the letters between the parties, above set out, and read the auditor's report, after which they moved the court for a directed verdict for plaintiff for the full amount found by the auditor. Counsel for defendant moved the court to direct a verdict for defendant, setting forth the grounds of exception to the report, whereupon the following colloquy occurred between the court and counsel for plaintiff:

"The Court: Do you care to reopen this case, and call any witnesses, and take testimony?
"Mr. Roberts: No, sir, we do not.
"The Court: All right, then; I will deny the motion of the plaintiff and grant the motion of the defendant, and grant you the right of appeal."

A verdict was accordingly directed, and from the judgment thereon this appeal was taken.

[1, 2] The propriety of the reference to the auditor need not be considered, since no objection to the reference was made by defendant. The power of a court, with consent of the parties, to refer a case pending before it "is incident to all judicial administration, where the right exists to ascertain the facts as well as to pronounce the law. 'Conventio facit legem.' In such an agreement there is nothing contrary to law or public policy." Newcomb v. Wood, 97 U. S. 581, 583 (24 L. Ed. 1085). Reference by consent may be made either by written stipulation of the parties or by order agreed to in open court. The reference here was without objection, which may be treated as equivalent to consent.

[3] Section 254, D. C. Code, providing for the reference to an auditor of actions at common law grounded upon account or involving open accounts between the parties, came into the Code in substantially the form of a prior existing rule of court, which was based upon a statute of Maryland of 1785. The authority for compulsory reference under the rule and judgment upon the report of the auditor in the absence of proper exceptions was upheld by this court in Simmons v. Morrison, 13 App. D. C. 161.

[4] The statute, however, applies only to actions at law wherein a mutual accounting between the parties is involved. This is not such a

case. Hence, if the reference is to be upheld, it must be done independently of the statute. In the federal courts inherent power resides to make references in actions at law to the same extent as in equity. In the Matter of Walter Peterson, 253 U. S. 300, 40 Sup. Ct. 543, 64 L. Ed. 919, present term, which was decided after the trial of this case in the court below, the court said:

"A compulsory reference with power to determine issues is impossible in the federal courts because of the Seventh Amendment. United States v. Rathbone, 2 Paine, 578, Fed. Cas. No. 16,121. But no reason exists why a compulsory reference to an auditor to simplify and clarify the issues and to make tentative findings may not be made at law, when occasion arises, as freely as compulsory references to special masters are made in equity. Reference of complicated questions of fact to a person specially appointed to hear the evidence and make findings thereon has long been recognized as an appropriate proceeding in an action at law. Heckers v. Fowler, 2 Wall. 123, 17 L. Ed. 759. The inherent power of a federal court to invoke such aid is the same whether the court sits in equity or at law."

[5, 6] Nor can the statute be construed as excluding references in actions at law other than those involving accounting. Nothing in the language of the statute appears to place a limitation upon the inherent power of the court to so refer a case, in order that the actual issues of fact may be defined and simplified. It may be stated, before entering into a consideration of the exceptions made by the defendant to the auditor's report, that, in the absence of exceptions under a general submission, the auditor's report, when admitted on trial before a jury, is prima facie evidence both of the facts and conclusions of fact therein contained. In the Peterson Case, the prima facie character of an auditor's report in a common-law case is established in the federal courts. On this point the court said:

"It may be assumed that, if accepted by the court, the report would be admitted at the trial before the jury as prima facie evidence both of the evidentiary facts and of the conclusions of fact therein set forth. The report, being evidence sufficient to satisfy the burden of proof (Wyman v. Whicher, 179 Mass. 276, 60 N. E. 612), would tend to dispense with the introduction at the trial before the jury of evidence on any matter not actually in dispute."

[7] The admission of the report in evidence in the present case amounted to an acceptance of the report by the court.

[8, 9] The exceptions, to be sufficient to avoid judgment on the report, must respond to the original issues made by the pleadings, as further defined and limited by the approved findings of the auditor. If proper exceptions are filed, in so far as they dispute the findings of fact by the auditor, they create issues to be submitted to the jury, and, upon the issues so defined, the trial will proceed in all respects as if no reference or report had been made. This in no respect deprives either party of any right granted by the Seventh Amendment to the Constitution. As was said in the Peterson Case:

"In so far as the task of the auditor is to define and simplify the issues, his function is, in essence, the same as that of pleading. The object of each is to concentrate the controversy upon the questions which should control the result. United States v. Gilmore, 7 Wall. 491, 494, 19 L. Ed. 282; Tucker v. United States, 151 U. S. 164, 168, 14 Sup. Ct. 299, 38 L. Ed. 112. No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined. It does not infringe the constitutional right

to a trial by jury to require, with a view to formulating the issues, an oath by each party to the facts relied upon. Fidelity & Deposit Co. v. United States, 187 U. S. 315, 23 Sup. Ct. 120, 47 L. Ed. 194. Nor does the requirement of a preliminary hearing infringe the constitutional right, either because it involves delay in reaching the jury trial, or because it affords opportunity for exploring in advance the evidence which the adversary purposes to introduce before the jury. Capital Traction Co. v. Hof, 174 U. S. 1, 19 Sup. Ct. 580, 43 L. Ed. 873. In view of these decisions, it cannot be deemed an undue obstruction of the right to a jury trial to require a preliminary hearing before an auditor. Nor can the order be held unconstitutional, as unduly interfering with the jury's determination of issues of fact, because it directs the auditor to form and express an opinion upon facts and items in dispute. The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as prima facie evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away either by the preliminary, tentative hearing before the auditor or by the use to which his report may be put. An order of a court, like a statute, is not unconstitutional because it endows an official act or finding with a presumption of regularity or of verity."

[10] The demurrer to the first of defendant's pleas was properly sustained. The Emergency Fleet Corporation is not such an agency of the government as to render it immune from suit. United States v. Strang, 254 U. S. 491, 41 Sup. Ct. 165, 65 L. Ed. ——, present term. Exception No. 1 was therefore properly stricken out.

In exception No. 2, portions of the Act of Congress of September 7, 1916, c. 451, 39 Stat. 728, creating the United States Shipping Board, are set out as authority for the incorporation of defendant company. It then recites certain facts as to the amount of capital stock and the number of shares issued, all of which were stipulated before the auditor and incorporated in his report.

An executive order delegating power conferred upon the President by the Act of Congress of June 15, 1917, c. 29, 40 Stat. 182, to the Shipping Board and the Emergency Fleet Corporation is set out for the purpose, as alleged, of showing that the Fleet Corporation was the agent of the United States, and that plaintiff contracted for the sale of the timber and materials in this cause mentioned knowing that the United States was the principal of the defendant, and, as such, alone liable upon the contract. It may be suggested, however, that the Fleet Corporation was authorized under its charter to enter into such a contract as the one in question and the presumption is that in the absence of evidence to the contrary, it was acting under its charter powers, and not under any special power given it by the President, and therefore it would be liable for a breach of its contract to the same extent as any other corporation.

[11] We think, however, that the delegation of the authority conferred upon the President in no way affects the right of action in this case. In Haines v. Lone Star Shipbuilding Co., 268 Pa. 92, 110 Atl. 788, where the court refused to quash a writ of foreign attachment against the Fleet Corporation, it is said:

"The Shipping Act provided for the formation of a corporation, with other minor provisions relative thereto, to carry out the purposes of the act. There is not a single line before us which has a tendency to show that the board con-

ferred on the Fleet Corporation any of its many administrative or governmental duties; but when we turn to the articles of association of this company we find the limit of this 'carrying out the purposes of the act' to be the 'purchase, construction, equipment, lease, charter, maintenance, and operation of merchant vessels in the commerce of the United States, and in general to do and to perform every lawful act and thing necessary or expedient to be done or performed for the efficient and profitable conducting of said business' That the President, under the emergency fund provision of the Urgent Deficiencies Act, designated this corporation to perform certain duties similar to those embodied in its certificate of incorporation, does not alter the real status of this concern, to wit, that it was an arm of the Shipping Board, functioning as a great industrial business corporation, with power to enact by-laws, vote its stock, deposit its money and securities, and declare dividends from the surplus and profits."

This is but in line with an analogous holding of the Supreme Court in Krichman v. United States, 255 U. S. ——, 41 Sup. Ct. 514, 65 L. Ed. ——, present term, decided May 16, 1921, in which the Fleet Corporation was held to be a separate entity from the government, notwithstanding the delegation of authority by the President "to exercise a portion of the power granted to him under the act of June 15, 1917."

The court erred in sustaining this exception, since it was but another way of raising the question of governmental agency, which had been properly ruled out by the court in sustaining plaintiff's demurrer to the first plea. This exception has no standing either in law or in fact.

[12] Since the case must go back for retrial, it is not necessary to consider in detail the objections under exception 3. Exception 3 (g) is, perhaps, good in form, and other exceptions may be well taken under defendant's theory of a conditional contract. Without stopping, therefore, to analyze the exceptions under No. 3, it may be stated that they are general, and in many instances, not responsive to either the pleadings or the auditor's report. No rule is better established than that exceptions to the report of an auditor must be specific, and point out with the utmost care the particular point to which exception is made. This court has repeatedly held that general allegations of error, without specifying the particular points to which the exceptions are directed, are clearly insufficient. Nowhere is the rule better stated than by the Chief Justice, in the recent case of Lincoln v. Portland Cement Co., 49 App. D. C. 33, 258 Fed. 505, as follows:

"Chapter 4 of the Code is a valid exercise of legislative power. Simmons v. Morrison, 13 App. D. C. 161, 169. It does not deprive a party, in a proper case, of a trial by the common-law triers of fact, but provides a simple and workable method by which he may secure it. If the facts upon which the auditor finds against him are specifically denied by him, he may have them tried by a jury; but, if he refuses to deny them specifically, and thus fails to raise an issue of fact, he has no just cause for complaint if the court holds as matter of law he has not made out a defense. To sustain exceptions so vague and general as those before us, when preciseness was easy, if the facts warranted it, would be to fritter away by construction the chapter of the Code we are examining. The act must be read 'according to the natural and obvious import of the language, without resorting to subtle and forced construction.' United States v Temple, 105 U. S. 97, 99 (26 L. Ed. 967); Moore v. United States, 249 U. S. 487, 39 Sup. Ct. 322, 63 L. Ed. 721, decided April 14, 1919."

[13] Some point is made as to the sufficiency of the correspondence of August 2 and 3, 1917, to establish a contract. We are of opinion that they constitute an offer and acceptance. The mere request in the letter of acceptance that, if possible, four schedules be furnished monthly, instead of two, constituted neither a counter offer nor a condition. Kelley, Maus & Co. v. Sibley, 137 Fed. 586, 69 C. C. A. 674. If there was anything in the conversation referred to in the telegram that affected the contract, it was incumbent upon defendant to show it by competent proof.

[14] Defendant has injected a point into the case not raised before the auditor nor made the basis of an exception, which, in view of a retrial, perhaps should be noticed. The contract is assailed upon the alleged lack of authority in the purchasing agent Wood to bind the corporation. It was not incumbent upon plaintiff to establish this officer's authority, nor is defendant in position now to deny liability on this ground. There was nothing to put plaintiff upon notice that the purchasing agent lacked authority to represent the corporation.

"Where a party deals with a corporation in good faith, the transaction is not ultra vires, and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists. If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them. * * * The principle has become axiomatic in the law of corporations, and by no tribunal has it been applied with more firmness and vigor than by the court. * * * Corporations are liable for the acts of their servants while engaged in the business of their employment in the same manner and to the same extent that individuals are liable under like circumstances." Merchants' Bank v. State Bank, 10 Wall. 604, 645 (19 L. Ed. 1008).

There is no theory upon which the judgment can be sustained. The admission in exception No. 3 of a liability of not to exceed $6,000 forbade a general verdict and judgment for defendant.

The judgment is reversed, with costs, and the cause is remanded for a new trial.

Reversed and remanded.

Mr. Justice BAILEY, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.

SMYTH, Chief Justice (dissenting in part). I concur in the judgment, but not in all that is said in the opinion. If it were not for the stipulation which appears in the record to the effect that the letter of August 2 from the appellant and the telegram and letter of August 3 from the appellee constitute an offer and an acceptance, I would be of the opinion that the appellant had failed to establish the contract sued upon.

From the conclusion that the auditor's report in a law case is prima facie evidence of the truth of his findings I must dissent, for these reasons:

Chapter 4 of the Code, providing for the appointment of an auditor in law cases and defining his authority, is, as the opinion states, substantially the same as a prior rule of the Supreme Court of the District which was based on the Maryland statute of 1785. Construing that rule, the Supreme Court of the District, sitting in general term, said in McCullough v. Groff, 2 Mackey (13 D. C.) 361, 365:

"When, therefore, the proceedings before the auditors under the Act of 1785, c. 80, were to be such 'as in cases of actions of account,' the right of hearing before the court as to all questions of law, and of trial by a jury upon all matters of fact, was intended to be preserved to the contestants. And where, in point of fact, the auditors have undertaken to decide all questions of fact incorporated into their report, without a reference to a jury, although such trial had been insisted upon by one of the parties, it seems to be clearly against the intent and spirit of the statute to admit the report before the jury even as prima facie evidence of the truth of its assertions or conclusions."

This decision was rendered in 1883. On the same day on which it was handed down the rule referred to was amended, to cure certain infirmities which had been developed during the trial of the case (Simmons v. Morrison, 13 App. D. C. 161, 166), but was not amended so as to make the auditor's report prima facie evidence. This is significant. As thus amended, the rule continued without change until it was incorporated into chapter 4 of the Code—a period of nearly 20 years.

Now, it is a well-established principle that when a Legislature adopts an act, the meaning of which has been settled, it enacts it with that meaning. Allen v. St. Louis Bank, 120 U. S. 20, 34, 7 Sup. Ct. 460, 30 L. Ed. 573; 25 R. C. L. 1069. The commission which framed the Code and the Congress which adopted it must be presumed to have had knowledge of the interpretation which had been given to the rule. If it was desired to change that interpretation, it would have been easy to do so by saying that the report of the auditor should be considered as prima facie evidence. I am warranted, therefore, in saying that Congress approved that interpretation, and that, in consequence, it is the proper interpretation of the chapter. The court ignores the decision in the McCullough Case, ignores the well-established rule of interpretation to which I have just called attention, and gives to the chapter a different meaning from that which it has had for nearly 40 years. This, I submit, is not judicial interpretation, but judicial legislation.

Even if we consider the chapter as a matter of first impression, unaided by the rules which I have invoked, there is no warrant for the interpretation given to it by the court. According to the chapter, a party who desires to frame an issue of fact for trial by the jury must file exceptions to the auditor's report, and then, says the chapter:

"Exceptions shall be tried and determined in the same manner as other issues of * * * fact made by the pleadings in an action at common law. * * *"

An issue of fact at common law is made by an assertion on the one hand and a denial thereof on the other, and the burden of proof is on him who makes the assertion. By a finding of fact the auditor affirms

a proposition. When an exception thereto is taken, the proposition is denied, and, by the words of the chapter, an issue of fact is thereby formed.. He who seeks to establish the proposition has the burden of proof. But the court says the burden is on the exceptant, which is equivalent to holding that he must prove a negative.

The opinion says the case was submitted to the auditor, not under the Code, but in pursuance of a rule of the common law to the effect that a court has the inherent power to refer any matter to an auditor for consideration and report. The record shows that there was no intention on the part of either of the parties, or of the court, to submit the case to any auditor but the one provided for by the Code. The order is that the case be referred "to the auditor of this court"—not to an auditor to be appointed, but to "the auditor of this court." The fact that it may not have been a proper case to submit to him can make no difference, because no objection was made to its submission, and neither of the parties raises any objection now on that score. I must conclude, therefore, that the submission was a valid one and was under the Code.

In this connection it is worthy of note that, while the court says the submission to the auditor was under the common law, it tests the sufficiency of the exceptions to his report by chapter 4. Is not this somewhat inconsistent?

I deny that a trial court in this District has any inherent common-law power to refer a law case to an auditor. Reference is made in the opinion to the decision of the Supreme Court of the United States in the Peterson Case, wherein it was held that federal courts generally have such power; but there was no statute controlling the situation in that case, and that makes the distinction between it and this case. Conceding that at one time the common law in this District was as stated in the Peterson Case, the court or Congress could change that law. It was changed first by the adoption of the rule to which I have referred, and then by the enactment of chapter 4 of the Code. If Congress was satisfied with the common law on the subject, why any legislation at all? The fact that it thought it necessary to legislate is conclusive that it desired to change the common law. By enacting chapter 4 it dealt fully with the subject, and the rule "expressio unius est exclusio alterius" applies.

If the common-law rule prevails, then chapter 4 is a useless thing, and Congress has accomplished nothing by enacting it. "There is a presumption against the construction which would render a statute ineffective or inefficient. * * *" Bird v. United States, 187 U. S. 118, 124, 23 Sup. Ct. 42, 44 (47 L. Ed. 100). Chapter 4 has often been interpreted. Its scope has been demarcated and its intent defined. By the decision just handed down a rule of practice of nearly 40 years' standing has been upset, uncertainty substituted for certainty, and an act. of Congress rendered nugatory, all of which is done, as I view it, without any warrant of law.