## UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. EICHBERG.

(Court of Appeals of District of Columbia. Submitted February 8, 1926. Decided June 1, 1926. Motion for Modification of Judgment Denied July 14, 1926.)

No. 4285.

1. United States ⊝⊃52½, New, vol. 19A Key-No. Series.

Motion to strike defense of Shipping Board Emergency Fleet Corporation in action against it for breach of contract, that it was acting solely as agent of United States, in view of executive order authorizing board to act for President under power conferred by Act June 15, 1917 (40 Stat. 182), *held* properly sustained, where action was against it as a private corporation.

2. Reference ⊝⊃105.

Issues of fact raised by exceptions to auditor's report, if supported by competent evidence, should be submitted to jury.

3. Reference ⊝⊃99(2).

Auditor's report, on reference by consent, makes merely a prima facie case, and when challenged is reduced to nature of pleading.

Appeal from the Supreme Court of the District of Columbia.

Action by Maurice H. Eichberg, trading as the National Timber Company, against the United States Shipping Board Emergency Fleet Corporation. Judgment for plaintiff, and defendant appeals. Reversed and remanded for a new trial.

H. E. Davis and B. J. Laws, both of Washington, D. C., for appellant.

Clinton Robb, J. H. Covington, and Spencer Gordon, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and HATFIELD, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This case has been here on two former appeals, 51 App. D. C. 44, 273 F. 886, and 52 App. D. C. 194, 285 F. 928, and once on petition for mandamus filed by the present appellant, No. 984 original, which was denied without opinion.

As set forth in our former opinion, in 51 App. D. C. 44, 273 F. 886, a contract was made between the plaintiff and defendant, Emergency Fleet Corporation, in which plaintiff agreed to sell and deliver to the defendant certain lumber. Subsequently, after plaintiff had started operations to produce the lumber, the defendant canceled the contract. This action is for damages growing out of a breach of the contract.

Defendant corporation, by way of answer to plaintiff's petition, relied upon two pleas: (1) That the defendant, in making the contract and canceling the same, was merely an agency of the United States, and that suit would lie only in the Court of Claims; and (2) the plea of general issue.

On motion of plaintiff, and without objection by defendant, the case was referred to the auditor, "to audit and state the accounts and dealings between the parties herein." When the matter came on before the auditor for hearing, a trial of the issues of fact was accorded, resulting in a report both of law and fact. The auditor found for the plaintiff in the sum of $116,346.13, with interest. When the report of the auditor was filed, defendant filed exceptions to the report. Plaintiff moved to strike out the exceptions, which motion was sustained as to some of the exceptions, and denied as to the others.

When the jury was impaneled, plaintiff offered the report in evidence as his prima facie case, together with certain stipulations between the parties in respect of issues of fact, and moved the court for a directed verdict. The court denied the motion, and asked counsel for plaintiff if they had any evidence to offer, to which counsel replied in the negative, when the court, on motion of counsel, directed the jury to return a verdict for defendant.

On appeal to this court, in 51 App. D. C. 44, 273 F. 886, the judgment was reversed and the cause remanded for a new trial. We held that the United States Shipping Board Emergency Fleet Corporation was a private corporation, a separate entity from the government, and could be sued as such for breach of contract, notwithstanding the delegation of authority by the President "to exercise a portion of the power granted to him under the Act of June 15, 1917." It was held that certain of the exceptions filed to the auditor's report were perhaps good, though stated in too general terms; that others were not responsive, either to the pleadings or to the auditor's report.

When the case came before the court below on the mandate of this court, plaintiff again filed a motion for judgment on the ground that there had been a common-law reference to the auditor by consent, and that the report having been accepted by the court, the exceptions filed thereto by defendant should be disregarded in that they were general, immaterial, irrelevant, and not founded upon the pleadings or the evidence adduced before the auditor. Defendant thereupon filed four motions: (1) To vacate and strike out the auditor's report, and for a jury trial; (2) to amend the exceptions to the auditor's report with leave to file additional exceptions; (3) to make certain findings of law; (4) to recommit the case to the auditor for additional testimony. The court denied plaintiff's motion, and granted defendant's motion No. 2, denying motions 1, 3, and 4.

From this order both parties came to this court by special appeal. On this appeal the order of the court was affirmed, and the cause remanded, with permission to defendant to file additional and amended exceptions to the auditor's report, with the statement that "whether the amended and additional exceptions are responsive to the pleadings and the evidence adduced before the auditor presents matters not raised by special appeal, since they have not been passed upon by the court below."

When the case again came on for hearing in the court below, and before a jury was called, plaintiff renewed his motion to strike out defendant's additional and amended exceptions to the auditor's report. This motion was sustained, and judgment for plaintiff was entered on the auditor's report. From the judgment this appeal was taken.

Notwithstanding our opinions in the former appeals, defendant again insists upon its original plea to the jurisdiction of the court, and that, although this plea was stricken out on demurrer, it was renewed in defendant's motion for an instructed verdict, from which the first appeal was taken; and also by motion for findings of law, from which the case came here on special appeal; and also by objection to the motion of plaintiff for judgment furnishing the basis for the present appeal. It is insisted by counsel for defendant that they are not now urging a point heretofore decided by this court, since at the time of the decision of the two previous appeals in this court the Supreme Court had not passed upon the application of the Act of June 15, 1917, 40 Stat. 182, to contracts of the character of the contract in this case.

The act of Congress in question, among other things, authorized and empowered the President "to modify, suspend, cancel, or requisition any existing or future contract for the building, production, or purchase of ships or material." Section 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛d). It provided that, in the event a contract was canceled by the President, or by an agency of the government selected by the President to exercise this authority, the President should make compensation for any damages sustained as the result of the cancellation of the contract, and, in case the amount determined was unsatisfactory to the claimant, he "shall be paid seventy-five per centum of the amount so determined by the President and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation therefor," in the manner provided in the sections of the Judicial Code conferring jurisdiction upon the Court of Claims. Following this line of reasoning, it is insisted by counsel for defendant that the courts of the District of Columbia are without jurisdiction, and that this action should have been brought in the Court of Claims.

It is true that the present contract was made after the passage of the Act of June 15, 1917, but prior to the order of the President of August 21, 1917, in which he directed the Emergency Fleet Corporation to act for and in behalf of him in exercising the powers con-

ferred upon him by the Act of June 15, 1917, aforesaid; but this is of no importance as effecting the question of jurisdiction. Reliance is placed by counsel for plaintiff on the decision of the Supreme Court in Russell Motor Car Co. v. United States, 261 U. S. 514, 43 S. Ct. 428, 67 L. Ed. 778. That case was a suit upon a contract made by the Secretary of the Navy in pursuance of the Act of June 15, 1917, in which the Secretary, as the official head of the Navy Department, acted on behalf of the United States. No corporate agency intervened. It was merely a suit upon a contract with the United States, executed by one of its duly authorized departmental heads.

Prior to the decision of the Russell Motor Case was the decision in the cases of Sloan Shipyards Corporation et al. v. United States Shipping Board Emergency Fleet Corporation and the United States, and Astoria Marine Iron Works v. United States Shipping Board Emergency Fleet Corporation et al., 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762.

"These cases," said Mr. Justice Holmes, delivering the opinion of the court, "present in different ways the question of the standing of the United States Shipping Board Emergency Fleet Corporation in the courts—the first two, whether it so far embodies the United States that these suits should have been brought in the Court of Claims." The court, after setting forth the provisions of the Act of September 7, 1916, 39 Stat. 728 (Comp. St. § 8146a et seq.) establishing the United States Shipping Board and giving it power to incorporate under the laws of the District of Columbia for the purchase, construction, and operation of merchant vessels, with a capital stock of not to exceed $50,000,-000, proceeded to hold that the corporation thus formed was a private corporation, and partook of all the functions and liabilities of a private corporation.

The contract in the Sloan Case was with the Emergency Fleet Corporation, and the corporation, refusing to comply with the terms of the contract, forced the Sloan Company into the execution of another contract. The suit was by way of a bill in equity to set aside the second contract and have an accounting on the original contract. The bill was dismissed, by the District Court in which the suit was originally brought, "on the ground that, as the claim was for more than $10,000, the suit must be brought in the Court of Claims. 268 F. 624; 272 F. 132." In that case, as in this, there was nothing in the contract or in the proceedings adopted by the

Fleet Corporation to cancel the contract that would indicate that the corporation was relying upon the powers delegated to it by the President.

The court, after citing the further delegation of power to the Fleet Corporation by the acts of Congress of March 1, 1918 (40 Stat. 438 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8146t]), April 22, 1918 (40 Stat. 535 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¼d, 3115¼dd]), July 9, 1918 (40 Stat. 845, 888), and November 4, 1918 (40 Stat. 1020, 1022), the executive order of December 3, 1918, "delegating all powers as to ship or plant construction and ratifying previous acts," and the Act of June 5, 1920, 41 Stat. 988, 993 (Comp. St. Ann. Supp. 1923, § 8146¼eee), "continuing the existence of the Fleet Corporation and its authority to operate vessels until all vessels are sold as directed by the act," said:

"These provisions sufficiently indicate the enormous powers ultimately given to the Fleet Corporation. They have suggested the argument that it was so far put in place of the sovereign as to share the immunity of the sovereign from suit otherwise than as the sovereign allows. But such a notion is a very dangerous departure from one of the first principles of our system of law. The sovereign, properly so called, is superior to suit for reasons that often have been explained. But the general rule is that any person within the jurisdiction always is amenable to the law. If he is sued for conduct harmful to the plaintiff, his only shield is a constitutional rule of law that exonerates him. Supposing the powers of the Fleet Corporation to have been given to a single man, we doubt if any one would contend that the acts of Congress and the delegations of authority from the President left him any less liable than other grantees of the power of eminent domain to be called upon to defend himself in court. An instrumentality of government he might be, and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts. * * * If what we have said is correct, it cannot matter that the agent is a corporation rather than a single man. The meaning of incorporation is that you have a person, and as a person one that presumably is subject to the general rules of law. The only serious question is whether special remedies have been provided by statute that displace those that otherwise would be at the plaintiff's command."

The court, referring to the Act of June 15, 1917, and the powers of the President

thereunder, and the allegation that the taking of possession of plaintiff's plants was unlawful, said:

"The plaintiffs are not suing the United States, but the Fleet Corporation, and if its act was unlawful, even if they might have sued the United States, they are not cut off from a remedy against the agent that did the wrongful act. In general, the United States cannot be sued for a tort; but its immunity does not extend to those that acted in its name. It is not impossible that the Fleet Corporation purported to act under the contract giving it the right to take possession in certain events, but that the plaintiffs can show that the events had not occurred. * * * We attach no importance to the fact that the second contract, alleged to have been illegally extorted, was made with the Fleet Corporation 'representing the United States of America.' The Fleet Corporation was the contractor, even if the added words had any secondary effect. But the bill alleges that it was brought about by the wrongful act of the Fleet Corporation. The conclusion that we reach is that the District Court erred in dismissing the bill, and we regard it as led up to and almost required by the decisions heretofore reached in The Lake Monroe, 250 U. S. 246 [39 S. Ct. 460, 63 L. Ed. 962], and United States v. Strang, 254 U. S. 491 [41 S. Ct. 165, 65 L. Ed. 368]. See, further, Dakota Central Telephone Co. v. South Dakota, 250 U. S. 163, 177, 178 [39 S. Ct. 507, 63 L. Ed. 910, 4 A. L. R. 1623]; Northern Pacific Ry. Co. v. North Dakota, 250 U. S. 135, 152, [39 S. Ct. 502, 63 L. Ed. 897]. The transfer of the property of the Fleet Corporation to the Shipping Board by the Act of June 5, 1920, c. 250, § 4, 41 Stat. 988, 990 [Comp. St. Ann. Supp. 1923, § 8146¼aa], may affect the value of the remedy afforded by the present suit but not the jurisdiction of the court."

In the Astoria Marine Iron Works Case the facts, as stated in 270 F. 635, 636, show it to be an action against the Fleet Corporation for the breach of a contract between the iron company and the Fleet Corporation, wherein the iron company agreed to maintain a suitable site at Astoria, Or., and to construct a marine railway of a lifting capacity of 4,000 tons, and a repair plant, and to equip the same under the terms of the contract; the Fleet Corporation reserving the privilege of taking over the title to the plant and all the materials and equipment.

It is significant that in the Russell Motor Case the court makes no reference whatever to the Sloan or Astoria decisions, conclusively indicating that in those cases the court was treating of subjects foreign to the one there under consideration. It would seem, though unnecessary to the determination of the present case, that the situation would not be different, had the contract expressly stated that the Fleet Corporation was acting as the agent of the United States, under the powers delegated to it by the President, since in the Astoria Marine Iron Works Case, by reference to the statement contained in 270 F. 635, this question of reading the express terms of the statute into the contract was directly raised.

[1] The Shipping Board, in the present case, in answer to plaintiff's petition, by way of defense, set up the authority vested in it by the President, and alleged that it was acting solely as the agent of the United States, and not on its own behalf as a private corporation. To this the plaintiff demurred, and moved to strike out this defense on the ground that it is immaterial, irrelevant, and constitutes no defense to the present action. The motion was properly sustained, since the action here is against the Shipping Board, acting in the capacity of a private corporation. In this it differs from the Russell Motor Case, where the action was clearly one against the United States, since the contract was made by the Secretary of the Navy, acting, not in a corporate capacity, but on behalf of the government, the only way in which he could act. This, in brief, we think, is the distinguishing feature which obviates the necessity of plaintiff invoking the jurisdiction of the Court of Claims.

Considering the merits of the appeal from the order of the court below in sustaining plaintiff's motion to strike out defendant's amended and additional exceptions, and from the judgment entered for defendant, the judgment is assailed on the broad ground that defendant has been denied the right of trial by jury. The order which was affirmed on special appeal (52 App. D. C. 194, 283 F. 928) directed "that defendant's said motion (2) for leave to defendant to amend the exceptions to said auditor's report, and to file additional exceptions to said report in accordance with the additional and amended exceptions thereto annexed, be and the same hereby is granted, and said amended and additional exceptions thereto annexed are hereby considered and treated as filed pursuant hereto, and the case is hereby ordered calendared for trial by jury upon the issues made by defendant's said additional amended exceptions to the report of the auditor."

[2] In our former opinion, referring to the auditor's report (page 196 [285 F. 930]), we

said: "While the reference was made on the motion of plaintiff, and was not objected to by defendant, it did not amount to a stipulation of reference for a finding of law and fact, which would accord the report the force and effect of a common-law award. It was not, therefore, a consent decree by express agreement of the parties. In equity: 'It was held that the court could not, of its motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers.' Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289. Upon the same reasoning in law, a reference by the court, 'of its motion, or upon the request of one party,' does not amount to a waiver of trial by jury, if by proper exception issues of fact can be framed for submission to a jury." An examination of the amended and additional exceptions, which are the same that were before the court in the former case, convince us now, as they did then, that issues of fact have been raised by the exceptions which, if supported by competent evidence, should be submitted to a jury.

On the first appeal, in 51 App. D. C. 44, 49, 273 F. 886, this court, in attempting to map out the course of procedure in the court below, said: "The exceptions, to be sufficient to avoid judgment on the report, must respond to the original issues made by the pleadings, as further defined and limited by the approved findings of the auditor. If proper exceptions are filed, in so far as they dispute the findings of fact by the auditor, they create issues to be submitted to the jury, and, upon the issues so defined, the trial will proceed in all respects as if no reference or report had been made."

In support of our position the court relied upon the decision in the Matter of Walter Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919, where the court said: "In so far as the task of the auditor is to define and simplify the issues, his function is, in essence, the same as that of pleading. The object of each is to concentrate the controversy upon the questions which should control the result. * * * The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as prima facie evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away, either by the preliminary, tentative hearing before the auditor or by the use to which his report may be put."

[3] It was thought that this sufficiently pointed out the course to be pursued in the court below, and inasmuch as the order calendaring the case for trial on the record thus made and approved had been made, nothing remained to be done, on the return of the mandate to the court below, but to proceed with the impaneling of a jury and the trial of the case, and nothing further remains to be done in the present appeal. As we pointed out, the auditor's report makes merely a prima facie case, and, when challenged, is reduced to the nature of a pleading. In this situation the most that the appellate court can say is that the exceptions on their face present issues of fact which, if supported by competent evidence, should be submitted to a jury. Of course, it would be both improper and impossible for the court, in the present status of the record, to analyze in advance the sufficiency of the exceptions, since much will depend upon the character of the evidence adduced and the possible contingencies that may arise in the course of the trial.

The judgment is reversed, with costs, and cause remanded for a new trial.